USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/2/17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

COVENTRY CAPITAL US LLC, :

                Plaintiff, : 17 Civ. 7417 (VM)(HBP)

  -against- : OPINION
                                        AND ORDER

EEA LIFE SETTLEMENTS, INC., :
et al.,
                            :

               Defendants.
                                :
-----------------------------------X

       PITMAN, United States Magistrate Judge:

I. Introduction

       By letter dated October 17, 2017 Coventry Capital US LLC ("Coventry") seeks an Order declaring that it may publicly file an unredacted copy of the complaint and the exhibit attached thereto. Defendants oppose plaintiff's application and cross-move for an Order directing that the complaint be filed under seal or, in the alternative, that additional material be redacted from the publicly available version of the complaint. For the reasons set forth below, plaintiff's application is granted and defendants' application is denied.

II. Facts

This is a diversity action arising out of the parties' unsuccessful efforts to negotiate the sale of a portfolio of life insurance policies from defendant EEA Life Settlements, Inc. ("EEA") to plaintiff. Prior to entering into those negotiations plaintiff and EEA entered into an agreement dated April 27, 2017 which provided, among other things, that the parties to the negotiations would not disclose "Confidential Information." The April 27 agreement defined "Confidential Information" as:

> all non-public or proprietary information, know-how and materials (whether technical, commercial, financial or otherwise and whether disclosed in writing, electronically, orally, visually or otherwise) which have been or may be disclosed by or on behalf of [EEA] to [Coventry] in relation to the Potential Transaction and relating to [EEA] and/or its business, products or marketing activities, together with the proposal, either party's interest in the proposal, the existence and the terms of this Agreement and any discussions and negotiations (including the status thereof) between the parties or their Related Parties, and with respect to the portfolio of life policies held by [EEA] or its subsidiaries, all personal identifying information relating to the underlying insureds (including, without limitation, dates of birth, social security numbers, medical records, addresses, phone numbers, passport numbers and driving licence numbers) . . . .

The negotiations for the sale of the policies ultimately foundered, and Coventry has now asserted claims for fraud and breach of contract.

In an effort to avoid a claim that it has breached the confidentiality agreement, Coventry has heavily redacted the publicly available version of the complaint on file with the Clerk of the Court. The redactions have placed virtually all of the allegations concerning the specifics of the parties' negotiations beyond the public's view.

Defendants not only oppose the motion to un-redact the complaint but claim that Coventry's redactions do not go far enough. Defendants contend that the entire complaint should be placed under seal or further redacted.

III. Analysis

Judicial documents, such as complaints, "are presumptively public so that the federal courts 'have a measure of accountability' and so that the public may 'have confidence in the administration of justice.'" Bernstein v. Bernstein Litowitz Berger & Grossman LLP, 814 F.3d 132, 139 (2d Cir. 2016), quoting United States v. Amodeo, 71 F.3d 1044, 1048 (2d Cir. 1995).

> There is a strong presumption of public access to "judicial documents," that is, such "items filed with the court that are relevant to the performance of the judicial function and useful in the judicial process." See In re Terrorist Attacks on September 11, 2001, 454 F. Supp. 2d 220, 222 (S.D.N.Y. 2006) (quoting SEC v. TheStreet.com, 273 F.3d 222, 231 (2d Cir. 2001)). "Accordingly, a party seeking a protective order sealing trial, other court hearings, or motions and accom-

3

panying exhibits filed with the court must satisfy a more demanding standard of good cause." In re Terrorist Attacks, 454 F. Supp. 2d at 222-23.

Std. Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc., 621 F. Supp. 2d 55, 61 (S.D.N.Y. 2007) (Kram, D.J.). "The common law right of public access to judicial documents is firmly rooted in our nation's history." Lugosch v. Pyramid Co. of Onandaga, 435 F.3d 110, 119 (2d Cir. 2006); accord In re Document Technologies Litig., 17 Civ. 2405 (JSR), 17 Civ. 3433 (JSR), 17 Civ. 3917 (JSR), 2017 WL 4797903 at *1 (S.D.N.Y. Oct. 23, 2017) (Rakoff, D.J.).

> In addition to the common law presumption of public access . . . , courts have identified a similar, though more demanding, presumption stemming from the First Amendment. See, e.g., Lugosch, 435 F.3d at 124; Gambale [v. Deutsche Bank AG, 377 F.3d 133, 140 & n.4 (2d Cir. 2004)]. The First Amendment's "qualified right of access to judicial documents" is "a necessary corollary of the capacity to attend the relevant proceedings." Hartford Courant Co. v. Pellegrino, 380 F.3d 83, 93 (2d Cir. 2004). Once a court has determined that "the more stringent First Amendment framework applies, continued sealing of the documents may be justified only with specific, on-the-record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim." Lugosch, 435 F.3d at 124.

Std. Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc., 07 Civ. 2014 (SWK), 2008 WL 199537 at *4 (S.D.N.Y. Jan. 22, 2008) (Kram, D.J.).

4

A complaint and its exhibits are judicial documents subject to the presumptive right of access under both the common law and the First Amendment because "'access to the complaint is almost always necessary if the public is to understand a court's decision'". Bernstein v. Bernstein Litowitz Berger & Grossman LLP, supra, 814 F.3d at 140, quoting FTC v. Abbvie Prods. LLC, 713 F.3d 54, 62 (11th Cir. 2013); accord United States v. Am. Univ. of Beirut, 14 Civ. 6899 (JPO), 2017 WL 3208586 at *1 (S.D.N.Y. July 27, 2017) (Oetken, D.J.); Cooksey v. Global Grind Digital, 14 Civ. 7146 (JGK), 2016 WL 316853 at *2 (S.D.N.Y. Jan. 26, 2016) (Koeltl, D.J.).

Like most rights, the public's common law and First Amendment right of access to judicial documents is a qualified right.

> Notwithstanding the presumption of access under both the common law and the First Amendment, [judicial] documents may be kept under seal if "countervailing factors" in the common law framework or "higher values" in the First Amendment framework so demand. [Where] the more stringent First Amendment framework applies, continued sealing of the documents may be justified only with specific, on-the-record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim.

Lugosch v. Pyramid Co. of Onondaga, supra, 435 F.3d at 124; accord In re Document Technologies Litig., supra, 2017 WL 4797903 at *2.

Confidential "business information that might harm a litigant's competitive standing" may warrant protection from disclosure. Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 598 (1978). However, the fact that business documents are secret or that their disclosure might result in adverse publicity does not automatically warrant a protective order. Gelb v. Am. Tel. & Tel. Co., 813 F. Supp. 1022, 1035 (S.D.N.Y. 1993) (McKenna, D.J.); see also Salomon Smith Barney, Inc. v. HBO & Co., 98 Civ. 8721 (LAK), 2001 WL 225040 at *3 (S.D.N.Y. Mar. 7, 2001) (Kaplan, D.J.) ("[I]mplicit in the notion of 'confidential business information' is something beyond the mere fact that the particular datum has not previously been made available to the public.").

"The party opposing disclosure [of a judicial document] must make a particular and specific demonstration of fact showing that disclosure would result in an injury sufficiently serious to warrant protection; broad allegations of harm unsubstantiated by specific examples or articulated reasoning fail to satisfy the test." In re Parmalat Sec. Litig., 258 F.R.D. 236, 244 (S.D.N.Y. 2009), citing Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir. 1986); Schiller v. City of New York, 04 Civ. 7922 (KMK)(JCF), 04 Civ. 7921 (KMK)(JCF), 2007 WL 136149 at *5 (S.D.N.Y. Jan. 19, 2007) (Francis, M.J.); Blum v. Schlegel, 150

F.R.D. 38, 41 (W.D.N.Y. 1993) ("The party seeking protection from disclosure has the burden of making a particular and specific demonstration of fact, as distinguished from general, conclusory statements revealing some injustice, prejudice, or consequential harm that will result if protection is denied.").

Defendants have not made the showing necessary to warrant any confidential treatment of the complaint. I have reviewed the redacted material and none of it comes close to being so sensitive and potentially damaging that defendants' interest in keeping it confidential outweighs the qualified public right of access. For example, although defendants claim that the redacted material discloses their confidential negotiation strategy, the only strategy disclosed in the complaint's description of the parties' negotiations is the same strategy that every seller of goods and services employs -- try to get the highest price in return for the least consideration. This kind of common knowledge does not warrant any protection.

Although defendants claim that the redacted material discloses confidential pricing and valuation methods, my review of the redacted material establishes that this is simply not true. Although the redacted material discloses the prices and valuations exchanged with Coventry in the course of the parties' negotiations, it does not disclose any method used by EEA to

7

reach those figures. For example, the redacted information does not disclose how EEA determined the current value of the particular insurance policies that made up the portfolio Coventry was negotiating to buy.

Finally, defendants' conclusory argument that disclosure will give defendants' competitors an unfair business advantage also falls flat. Unlike common stock, a portfolio of life insurance policies is unique, and its value turns on the amount of the death benefit of each policy, the health and age of the individual insureds, the premiums that remain to be paid, future interest rates and, no doubt, a number of additional factors. Given the difficulty of determining the current value of a life insurance policy and the fact that such policies are now traded as investments, an accurate method of determining the current value of a life insurance policy may well be the kind of information that gives an investor in life insurance policies a competitive advantage. The complaint, however, contains no such disclosures. Merely disclosing the price defendants sought for a portfolio (the details of which are unknown) provides no information concerning the method by which defendants arrived at that price. In addition, defendants make no claim that they are still attempting to sell the same portfolio that was the subject of their negotiations with Coventry. Thus, there is no reason to

believe that disclosure of the price that defendants sought from Coventry will have any adverse consequences for defendants.[1]

In summary, apart from broad conclusory statements that are belied by the redacted material itself, defendants offer no facts or evidence of injury sufficient to outweigh the public's right of access to the complaint in this matter.

IV. Conclusion

Accordingly, for all the foregoing reasons, plaintiff's application to file publicly an unredacted copy of the complaint and the exhibit annexed thereto is granted, and defendants' cross-application to seal the complaint or to redact additional material from the complaint is denied.

Dated: New York, New York
November 2, 2017

SO ORDERED

HENRY PITMAN
United States Magistrate Judge

Copies transmitted to:

All Counsel

---

[1] Assuming that the value of a portfolio of life insurance remains constant over time, disclosure that defendants sought a certain price from Coventry might impair their ability to seek a higher price from another potential purchaser. However, given that the life expectancy of the insureds necessarily changes every day, it seems unlikely that the value of a portfolio of life insurance policies remains constant over time.

9