LAW OFFICES
# WILLIAMS & CONNOLLY LLP
725 TWELFTH STREET, N.W.
WASHINGTON, D. C. 20005-5901
(202) 434-5000
FAX (202) 434-5029

KENNETH J. BROWN
(202) 434 5818
kbrown@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

June 26, 2018

**VIA ECF**

The Honorable Henry Pitman
United States Magistrate Judge
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

    Re:    *Coventry Capital US LLC v. EEA Life Settlements, Inc., et al.,*
             **Civil Action No. 1:17-cv-07417-VM-HBP**

Dear Judge Pitman:

    I write on behalf of Plaintiff Coventry Capital US LLC ("Coventry Capital") in reply to Defendants' June 19, 2018 letters. *See* Dkt. Nos. 70, 71. For the reasons that follow, the Court should (1) order the Individual Defendants to produce documents from EEA UK and EEA Guernsey that unquestionably are within their possession, custody, or control, or impose an adverse inference to alleviate the prejudice caused to Coventry Capital by their failure to do so; and (2) order EEA, Inc. to produce documents from EEA Guernsey, which it is able to obtain by virtue of its contract with that entity. Defendants' contrary arguments disregard the law — which is unambiguous on both issues — and reflect a continued disregard for their discovery obligations under the Federal Rules of Civil Procedure.

        **I.**    **The Defendants' Obstinacy Deprives Coventry Capital of Key Information.**

    The key documents in this case are nominally held by EEA UK and EEA Guernsey, potentially among other affiliated entities. After initially telling Plaintiffs that they would rely on those documents to support their defense, Defendants did an about-face and now claim that they are unable to access any of those key materials. This includes the Individual Defendants' own emails and virtually all other relevant communications among Defendants and others within the EEA family. It also includes communications between the parties, several of which were important enough to be cited in Coventry Capital's complaint. *See* Dkt. No. 48 at 4:9–24; Ex. 1

(compilation of emails cited in the Complaint and produced by Coventry Capital, but never produced by Defendants). Through this conduct, Defendants have deprived Coventry Capital of scores of documents that are centrally relevant to this dispute.

## II. The Individual Defendants Should Either Produce Documents From EEA UK and EEA Guernsey Or Be Sanctioned.

The Individual Defendants have twice admitted that they have the practical ability to obtain documents from EEA UK and EEA Guernsey. *See* Dkt. No. 52 ¶¶ 4 5; Dkt. No. 53 ¶¶ 4 5; Ex. 14 to Dkt. No. 66 (Letter from K. Brown to Hon. Pitman ("Brown Letter")) ¶ 7; Ex. 15 to Brown Letter ¶ 10; Ex. 17 to Brown Letter at 2 n.2. The Court rightly rejected their assertion that, despite these admissions, they were legally incapable of producing the documents because they did not own them. *See* Dkt. No. 62 at 10:13 16. Indeed, as the Court has held, the Individual Defendants' practical ability to obtain documents from EEA UK and EEA Guernsey is dispositive under Rule 34. *Id.* at 10:13 16, 14:15 18, 16:21 25, 22:21 25; *see also* Dkt. No. 47 at 4 ("A document or tangible object is within a party's control if the party has the practical ability to obtain the document or object.").

Having lost that argument and having been caught in a series of misrepresentations concerning their access to the documents at issue, *see* Dkt. No. 66 (Brown Letter)—the Individual Defendants now conspire with their affiliates to manufacture yet another obstacle to production. Now, they say, they lack the practical ability to obtain documents because, following the Court's Order compelling production, EEA UK and EEA Guernsey denied them access to those documents. *See* Ex. 20 to Brown Letter at 2, 5, 8, 11. The supposed "denial of access" is a transparent sham that was orchestrated by the Individual Defendants and their co-directors to block discovery in this case *after* they lost a motion to compel.

Courts in this district have rejected similar attempts to deny access to documents after losing a motion to compel and have imposed sanctions to compensate the opposing party for the loss of relevant information. *See Chevron Corp. v. Donziger*, 296 F.R.D. 168, 210, 212 (S.D.N.Y. 2013) (rejecting defendant's assertion after the court found possession, custody, or control that he had been denied access to documents because the denial "reflected an effort to create a false impression in order to avoid the entry of or defeat the purpose of the [Court's] Order [compelling production]"), *aff'd*, 833 F.3d 74, 145–49 (2d Cir. 2016); *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, No. 14-cv-4394-AJN-BCM, at 9 (S.D.N.Y. May 15, 2018) (Ex. 21 to Brown Letter) (holding, in analogous situation involving refusal to produce documents held by party's assignor, that "the power to sanction, like the power to compel, cannot be negated by the assignee's claim that it is unable to obtain the necessary compliance from its non-party assignor"). These decisions recognize that possession, custody, or control is not something that can be revoked after the fact by conspiring with non-parties to block an opponent's ability to utilize the Federal Rules. *See In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 236 F.R.D. 177, 181 82 (S.D.N.Y. 2006) (officer who had admitted access to documents of third-party company could not avoid producing those documents by resigning the position that gave him that access or asserting that company policies removed his "authority to produce [the documents]").

Hon. Henry Pitman
June 26, 2018
Page 3

Contrary to the Individual Defendants' claim, Dkt. No. 70 at 9‒10, the individuals in *Chevron* and *Flag Telecom* had no more control over the relevant documents than the Individual Defendants do here. Not only have the Individual Defendants admitted that they routinely access the documents in the ordinary course of business, but as directors of the entities at issue they obviously have the legal right to access their companies' documents. *See, e.g.*, *Conway v. Petronius Clothing Co.* [1978] 1 WLR 72 (English decision finding a right to inspection grounded in a prior ruling "that a director had a right at common law to see and take copies of documents belonging to his company, in order that he might properly perform his duties") (attached as Exhibit 2). Furthermore, there is no basis to disregard Judge Moses's holding in *Royal Park* that once a finding of possession, custody, or control has been made, sham attempts to unravel such a finding by conspiring with the affiliated non-party must be rejected. *See Royal Park*, No. 14-cv-4394-AJN-BCM, at 9. That rule is of equal force whether the initial finding of control was due to an assignee relationship or because of admitted access to documents in the ordinary course of business by the non-party's director. Either way, to countenance such obstruction would provide a roadmap for the evasion of civil discovery.

For that reason, the answer to the Court's question of what to do if EEA UK and EEA Guernsey told the Individual Defendants "we're not giving [the documents] to you," Dkt. No. 62 at 19:5‒14, is clear:  The Individual Defendants must drop their act and comply with the Court's May 11, 2018 Order holding that they have the practical ability ‒ to say nothing of the legal right, as directors ‒ to obtain documents from EEA UK and EEA Guernsey and that they must produce those documents. *See* Dkt. No. 62 at 10:13‒16, 14:15‒18, 16:21‒25, 22:21‒25. If they do not, the Court should impose an adverse inference to cure the prejudice to Coventry Capital that is caused by the withholding of documents that are core to Coventry Capital's case.

The Individual Defendants claim that the Court invited their conduct by raising a hypothetical during the May 11, 2018 argument. *See* Dkt. No. 70 at 3‒4, 6. Coventry Capital does not understand the Court to have done any such thing. The Court asked what would happen if EEA UK and EEA Guernsey purported to cut off the Individual Defendants' access to documents for purposes of litigation, *id.* at 19:18‒20:3, and then recognized that the issue was not before it and would be "a bridge I guess we can cross down the road," *id.* at 22:20‒23:3. We are now at that bridge, and under the foregoing authorities, the path forward is clear:  The only appropriate consequence for the Individual Defendants' conduct is proportional discovery sanctions. *See id.* at 21:8‒11. Notably, the Individual Defendants did not respond at all to the portion of Coventry Capital's letter analyzing the standard for imposing sanctions. *See* Dkt. No. 66 at 6‒8. The Individual Defendants thereby concede that their only defense to the imposition of sanctions is the manufactured denial of access by the very companies on whose boards they sit.[1] And as the preceding authorities make clear, that is no defense at all.

---

[1] The Individual Defendants' assertion that producing documents "could violate UK regulations governing employees of registered financial institutions," Dkt. No. 70 at 5, was waived and fails to meet their burden in raising a foreign-law objection, *see Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992) (where party failed to raise foreign-law objection in responses to discovery requests and response to motion to compel, "[i]ts objections . . . based on the PRC secrecy laws were therefore waived"); *Alfadda v. Fenn*, 149 F.R.D. 28, 34 (S.D.N.Y.

Defendants also fault Coventry Capital for not proceeding under the Hague Convention. *See* Dkt. No. 70 at 2 3, 6 7; Dkt. No. 71 at 6. As this Court recently observed, however, "there is a real possibility that [a] plaintiff would not be able to obtain the discovery [it] seeks through the Hague Convention." *Laydon v. Mizuho Bank, Ltd.*, 183 F. Supp. 3d 409, 422 (S.D.N.Y. 2016). That is so because "a UK court may refuse to execute a letter of request made pursuant to the Hague Convention unless the request is narrow, setting out specific documents that are required . . . as opposed to setting out a general description of the types of evidence required." *Id.* There is no reason for Coventry Capital to resort to such procedures when the Individual Defendants have admitted that they access relevant documents in the ordinary course of business and EEA, Inc. has a contractual right to demand the documents. If Defendants' objection is that the adjudication of their obligations under the Federal Rules has taken too long, that is a product of their own obstructive conduct. Had they actually "take[n] their discovery obligations seriously," Dkt. No. 70 at 1, Coventry Capital would have been provided the documents critical to its case and would not need to seek an adverse inference to compensate for that deficiency.

### III.     EEA, Inc. Should Be Ordered To Produce Documents.

The Management Agreement between EEA, Inc. and EEA Guernsey (recently produced by a non-party) contains ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. It also makes plain that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *See* Ex. 1 to Brown Letter ¶¶ 7(c), 7(d)(v). EEA, Inc.'s ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ is legally dispositive, as "the cases are fairly uniform that a contractual obligation to provide documents is **dispositive** of the issue of control." *Masimo Corp. v. Shenzhen Mindray Bio–Medical Elec. Co. Ltd.*, 2015 WL 12912331, at *1 (C.D. Cal. Apr. 17, 2015) (emphasis added); *see also Mazzei v. Money Store,* 2014 WL 3610894, at *3 (S.D.N.Y. July 21, 2014) ("A party is in control over any documents in the possession of a third party if that third party is contractually obligated to make them available."); *Alexander Interactive, Inc. v. Adorama, Inc.,* 2014 WL 61472, at *3 (S.D.N.Y. Jan. 6, 2014) ("To determine a responding party's 'practical ability' to obtain documents from a non-party, courts in this district have looked to the existence of cooperative agreements or contracts between the responding party and non-party.").

To evade the clear application of this rule to its Management Agreement with EEA Guernsey, EEA, Inc. contorts itself to interpret the Management Agreement in three indefensible frankly, bizarre ways:

*First*, EEA, Inc. attempts to ." Ex. 1 to Brown Letter ¶ 7(c). EEA, Inc. claims that ▓▓▓▓▓▓

---

1993) (party raising a foreign-law objection bears the "burden of demonstrating that such law actually bars the production or testimony at issue").

███." Dkt. No. 71 at 4 (emphasis in original).  The argument that ███ is absurd.  *See* Document, Black's Law Dictionary (10th ed. 2014) (a "document" is "any *information* stored on a computer, electronic storage device, or any other medium") (emphasis added); *Cheng v. Lakeforest Assocs., LLC*, 2014 WL 2964082, at *5 (D. Md. June 30, 2014) ("Caselaw demonstrates that a contractual relationship between two parties, which privies one party to access *documents or information* physically possessed by the other, can be sufficient to establish the requisite control necessary to compel production of a discovery-related document." (emphasis added)).

*Second*, EEA, Inc. relies on a strained reading of ¶ 7 of the Management Agreement ███.  *See* Dkt. No. 71 at 4.  Even if this were true, it would be irrelevant for the reasons discussed in the immediately preceding paragraph.  But it is also wrong as a matter of contractual interpretation.  Paragraph 7 of the Management Agreement ███."  Ex. 1 to Brown Letter ¶ 7(d)(v).  EEA, Inc. nonetheless argues that ¶ 7(d)(v) ███.  *See* Dkt. No. 71 at 4.  There is no basis to ███.  Doing so would also render the provision incoherent.  For example, ¶ 7(a) ███."  *See id.* ¶ 7(a).

*Third*, EEA, Inc. claims that ¶ 6(d) of the Management Agreement ███.  Dkt. No. 71 at 5.  But as a matter of law, the ability to ███ ***is*** the ability to control the document for purposes of Rule 34.  *See Chevron Corp. v. Salazar*, 275 F.R.D. 437, 450 (S.D.N.Y. 2011) (when a party "has the ability in the ordinary course of business to obtain documents held by [a] corporate entity," that party has the practical ability to obtain the documents for purposes of Rule 34 (alteration and internal quotation marks omitted)); Dkt. No. 62 at 16:21 25 ("[W]hat seems incongruous is the notion that they can access documents on Monday for corporate business, but they can't access the same documents on Tuesday to produce here.").

EEA, Inc.'s tortured reading of its Management Agreement with EEA Guernsey makes clear what is really going on  EEA, Inc. is coordinating with EEA Guernsey to avoid being required to produce documents it undoubtedly has the right and ability to obtain.  This is best illustrated by EEA, Inc.'s argument that even if ¶ 7 of the Management Agreement ███, the Court is powerless because "all requests to the Guernsey Manager to obtain such documents have been denied."  Dkt. No. 71 at 5.  But EEA, Inc. has never truly exercised its rights under ¶ 7  after all, it doesn't think they



exist. Even if it had, and even if EEA Guernsey refused to comply, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *See* Ex. 1 to Brown Letter ¶ 22(b)(1)(bb). That EEA, Inc. has done nothing to invoke or defend its rights under the Management Agreement further confirms that its entire story is a sham.[2]

This case therefore bears no resemblance to the decisions cited by EEA, Inc., neither of which had anything to do with such contractual arrangements. One decision recognized the general rule that a party has control over "the records of a corporation for which the party serves as an officer," subject to an "unusual" exception in that case because the individual was merely "a figurehead," "no longer has a functional . . . e-mail account," and "has no authority over current employees." *In re Application of Potanina*, 2015 WL 4476612, at *2 3 (S.D.N.Y. June 30, 2015). Here, in contrast, EEA, Inc. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. The other case remanded for consideration of whether a corporation's director and minority shareholder had the practical ability to obtain documents. *See Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 138 (2d Cir. 2007). On remand, the Court imposed a default judgment after finding that the individual like all three Defendants here had "concocted" the denial of access, as evidenced in part by the individual's "ever-changing objections" to production. *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 2010 WL 3155167, at *10 14 (S.D.N.Y. July 30, 2010), *aff'd*, 450 F. App'x 87 (2d Cir. 2011). EEA, Inc. has similarly "concocted" the denial of access by EEA Guernsey. In the end, the bedrock rule under Federal Rule of Civil Procedure 34 applies clearly: "A party is in control over any documents in the possession of a third party if that third party is contractually obligated to make them available." *Mazzei*, 2014 WL 3610894, at *3.

\* \* \* \* \*

The effect of Defendants' intransigence is that they have produced little more than the "scant" production the Court recognized had been made by late March. *See* Dkt. No. 47 at 5. EEA, Inc. has produced only 150 documents, while the Individual Defendants have produced 251 documents. The vast majority of the documents that have been produced to Coventry Capital in this case came from ViaSource, yet even those documents only bring the total production to par with Coventry Capital's production. *See* Dkt. No. 71 at 2. This case is about Defendants' conduct and their intent in carrying it out, issues on which Defendants undoubtedly have substantially more documents than Coventry Capital. The fact that Defendants (plus ViaSource) collectively have produced the same number of documents as Coventry Capital reflects the inadequacy of

---

[2] EEA, Inc. misstates the record when it asserts that Coventry Capital conceded that EEA, Inc. "cannot produce what it simply does not have the ability to access." Dkt. No. 71 at 5. In February, Coventry Capital argued that the Defendants had waived any objection that they lacked possession, custody, or control over documents nominally held by their affiliates. *See* Ex. 13 to Brown Letter at 3. During the March 8, 2018 hearing, the Court suggested that there may be no remedy for such a waiver *if* the documents are possessed and controlled by a completely unaffiliated person (another Judge, in the Court's hypothetical). *See* Dkt. No. 48 at 62:11 64:18. Although Coventry Capital agreed this "may" be true in a case (unlike this one) with those facts, it went on to make clear that the hypothetical is irrelevant here because EEA, Inc. has access to the documents nominally held by its affiliates. *See id.* at 64:20 65:17.

Hon. Henry Pitman
June 26, 2018
Page 7

Defendants' production. The Individual Defendants' failure to comply with the Court's Order regarding production of these documents deprives Coventry Capital of documents that are of central relevance to its claims. The Court should therefore put the Individual Defendants to a choice: Either produce the documents from EEA UK and EEA Guernsey to which Coventry Capital is entitled, or face an adverse inference to compensate Coventry Capital for the improper withholding of documents to which it is entitled under the Federal Rules. And the Court should also order EEA, Inc. to obtain responsive documents from EEA Guernsey, pursuant to ███ ███████████████.

We appreciate the Court's attention to these matters and are prepared to address them further at the Court's convenience.

Respectfully submitted,

*Kenneth J. Brown*

Kenneth J. Brown

cc:   Counsel of Record