LAW OFFICES
# WILLIAMS & CONNOLLY LLP
725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

WILLIAM P. ASHWORTH
(202) 434-5683
washworth@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

September 21, 2018

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/24/18

**VIA FACSIMILE (212) 805-6382**
The Honorable Victor Marrero
United States District Judge
500 Pearl Street, Suite 1040
New York, NY 10007

Re:   *Coventry Capital v. EEA*, No. 17-cv-07417

Dear Judge Marrero:

I write on behalf of Plaintiff Coventry Capital US LLC ("Coventry") to request a pre-motion conference concerning Coventry's motion for a preliminary injunction precluding Defendant EEA Life Settlements, Inc. ("EEA") from selling, transferring, or pledging the portfolio of life insurance policies (the "Portfolio") that is the subject of this action.

This case "arises out of a pattern of fraudulent, bad faith conduct by EEA, its lead contract negotiator, Vincent Piscaer, and one of its senior officials, Hiren Patel, in undermining the negotiation of a 'Definitive Agreement' to sell a portfolio of life insurance policies to Coventry Capital." Dkt. 31 (Complaint) ¶ 1. EEA's misconduct permeated the negotiation of the April 27, 2017 contract (the "Contract") between Coventry and EEA, which set forth the framework for such a Definitive Agreement, as well as all subsequent negotiations under the Contract. Coventry seeks (among other things) specific performance of the Contract and a permanent injunction barring the sale or transfer of the Portfolio until EEA has complied with its obligations. *Id.* at 28.

EEA holds the Portfolio—its sole asset—on behalf of the Guernsey-based EEA Life Settlements Fund PCC Limited (the "Fund"). *See* Ex. 1 (Annual Report) at 2. Within the last week, Coventry learned that EEA is offering the Portfolio for sale. A preliminary injunction prohibiting EEA from selling, transferring, or pledging the Portfolio (or any proceeds from a sale therefrom) is urgently needed, because any such sale would vitiate the equitable relief that Coventry seeks and render EEA judgment proof by dissipating its only assets.

### I.   The Court Should Enjoin EEA from Selling the Portfolio.

"A party seeking a preliminary injunction must show: (1) a likelihood of irreparable harm in the absence of the injunction; and (2) either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation, with a balance of hardships tipping decidedly in the movant's favor." *C.D.S., Inc. v. Bradley Zetler, CDS, LLC*, 190 F. Supp. 3d 375, 376 (S.D.N.Y. 2016). Each factor is satisfied here.

Hon. Victor Marrero
September 21, 2018
Page 2

### A. Coventry Faces Irreparable Harm.

A sale will irreparably harm Coventry in two distinct ways. *First*, it would vitiate Coventry's requested equitable relief—that EEA be ordered to comply with its contractual promise to negotiate a sale of the Portfolio to Coventry in good faith. *See* Dkt. 31 (Complaint) at 28. The permanent loss of this bargained-for opportunity is "actual and imminent" and "cannot be remedied if a court waits until the end of trial to resolve the harm." *Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009). The Portfolio is a distinctive asset, consisting of life insurance policies which, unlike many fungible financial assets, have multiple unique features (such as a policy's face value, premiums, and carrier, and an insured's age, life expectancy, and medical impairment). Furthermore, the Portfolio is of a type and size that rarely becomes available in the market.[1] Courts regularly find irreparable harm because the loss of such unique assets and business opportunities cannot be remedied at law. *See, e.g., Alcatel Space, S.A. v. Loral Space & Cmcns. Ltd.*, 154 F. Supp. 2d 570, 584 (S.D.N.Y. 2001) (finding irreparable harm from a breach of contract due in part to "the limited number of satellite opportunities available"), *aff'd* 25 F. App'x 83 (2d Cir. 2002); *Space Imaging Europe Ltd. v. Space Imaging L.P.*, 1998 WL 190356, at *2 (S.D.N.Y. Apr. 21, 1998) (finding irreparable harm from breach of right of first refusal in a letter of intent); *EUSA Pharma (US), Inc. v. Innocoll Pharms. Ltd.*, 594 F. Supp. 2d 570, 582 (E.D. Pa. 2009) (finding irreparable harm where plaintiff would lose option to buy rights to a particular product and thereby would "los[e] 'a unique, non-replicable business opportunity'").

*Second*, once the Portfolio—EEA's sole asset—is sold, EEA will transfer the proceeds to the Fund in Guernsey which, given the Fund's troubled history, needs cash to assuage disgruntled investors who have been demanding their money back. *See* Dkt. 31 (Complaint) ¶¶ 20–24. In this case, EEA has demonstrated its willingness to use its foreign affiliates to shield itself from the consequences of its actions in the United States. *See* Dkt. No. 66 (June 12, 2018 Ltr.).[2] A complete dissipation of EEA's assets would render it judgment proof. This creates irreparable harm because "a money judgment will go unsatisfied absent equitable relief," meaning that Coventry would have no remedy at law. *Alvenus Shipping Co. v. Delta Petroleum (U.S.A.) Ltd.*, 876 F. Supp. 482, 487 (S.D.N.Y. 1994); *see also, e.g., Bank of Am., N.A. v. Yi*, 294 F. Supp. 3d 62, 80 (W.D.N.Y. 2018) ("'[A] preliminary injunction may issue to preserve assets as security for a potential monetary judgment where the evidence shows that a party intends to frustrate any judgment on the merits by making it uncollectible.'"); *Dong v. Miller*, 2018 WL 1445573, at *11 (E.D.N.Y. Mar. 23, 2018).[3]

Finally, EEA agreed "that a breach of its obligations under the Binding Provisions [of the Contract] may result in irreparable harm to the other Party that cannot be adequately relieved by money damages alone." Dkt. 31.1 (Contract) ¶ II.10. This "support[s] a finding of irreparable harm." *Mercer Health & Benefits LLC v. DiGregorio*, 307 F. Supp. 3d 326, 348 (S.D.N.Y. 2018).

---

[1] Coventry is prepared to submit declarations on these issues if needed as part of motion briefing.
[2] EEA has claimed to be a shell that possesses no documents, that documents relevant to the case are held by its UK and Guernsey affiliates, and that it lacks control over those affiliates.
[3] Nor is there any question that Rule 65 permits the Court to issue such an injunction, as it pertains "to assets that have a sufficient nexus to Plaintiff[']s equitable claims." *Dong*, 2018 WL 1445573, at *1; *accord Gucci Am., Inc. v. Li*, 768 F.3d 122, 131–32 (2d Cir. 2014).

Hon. Victor Marrero
September 21, 2018
Page 3

### B. Coventry Is Likely To Succeed on the Merits.

Coventry also is highly likely to succeed on the merits of its contract claim. Even the limited discovery to date—which has been stymied by Defendants' ongoing shell game regarding which entity in the EEA group of companies holds relevant documents—shows that EEA breached its contractual obligation to negotiate in good faith. EEA took negotiating positions that contradicted the Contract, Dkt. 31 (Complaint) ¶¶ 40–49, as well as other shifting and contradictory positions, *id.* ¶¶ 37–39, all designed to scuttle any possible Definitive Agreement. *See also* Ex. 2 (emails cited in ¶¶ 37–49). The reason for these improper, ever-changing, and contradictory demands was that EEA never intended to sell the Portfolio within the Contract's framework. *See* Ex. 3 (VIA0000169) ("At its current offer price at approximately NAV the Manager is not minded to accept the offer as we do not think a strong enough case can be made to sell the full portfolio at this level."); Ex. 4 (HV000562) (electronic messaging chain between Defendants Patel and Piscaer, in which Patel states "[b]etween you and I, if we do not get the best $50m of policies then we pull it" due to Patel's belief "that we could get more out of [Coventry] or anyone else," and Piscaer agrees with Patel that "[t]he real work is us getting the best $50m of policies").[4] These actions violated EEA's "obligation to negotiate the open issues in good faith in an attempt to reach the . . . objective within the agreed framework." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011) (quotation marks omitted); *see also, e.g., Juanes v. Lyzwinski*, 875 F. Supp. 2d 155, 163 (N.D.N.Y. 2012) (jury could find bad faith if party "demanded modifications . . . in order to provide a pretext for not completing the purchase").

EEA also premised negotiations on a misrepresentation that the Portfolio had to be sold for the Net Asset Value ("NAV") of the policies within it, which EEA claimed was $204 million. *See* Dkt. 31 (Complaint) ¶¶ 31–36; Ex. 5 (emails cited in ¶¶ 31–36). In fact, this was false. *See* Ex. 6 (VIA0000071) (discussing the bid for "the balance of the portfolio by Coventry, which is above the Net Asset Value . . . ."); Ex. 7 (VIA0000252) (expressing EEA's intent to ask Coventry for "an improvement of their bid so that a premium to NAV is achieved"). This, too, was a violation of EEA's contractual obligations. *See L-7 Designs*, 647 F.3d at 432–33 (bad faith conduct includes "repeated material representations . . . that [party] subsequently learned were false").

### C. The Balance of Hardships and Public Interest Favor Coventry.

The remaining factors also favor Coventry. The balance of hardships tips in its favor because an injunction is needed to avoid significant, irreparable harm. EEA, by contrast, would merely continue to operate without selling the Portfolio—as it has in the year since this lawsuit was filed. And the public interest favors Coventry due to the "well-recognized public interest in enforcing contracts and upholding the rule of law." *Empower Energies, Inc. v. SolarBlue, LLC*, 2016 WL 5338555, at *13 (S.D.N.Y. Sept. 23, 2016).

We will be prepared to address these issues further at the Court's convenience.

---

[4] During the negotiations, a number of the policies in the Portfolio matured (or the health of insureds declined significantly), an additional reason why EEA scuttled any agreement that would have required those death benefits to be paid to Coventry. *See* Dkt. 31 (Complaint) ¶ 6.

Hon. Victor Marrero
September 21, 2018
Page 4

Respectfully submitted,

William P. Ashworth

cc:   Counsel of record

---

Defendant is directed to respond by 9-26-18, by letter not to exceed three (3) pages, to the matter set forth above by plaintiff, showing cause why the relief requested should not be granted.

**SO ORDERED.**

9-24-18

DATE          VICTOR MARRERO, U.S.D.J.

LAW OFFICES
## WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

WILLIAM P. ASHWORTH
(202) 434-5685
washworth@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

September 21, 2018

**VIA FACSIMILE (212) 805-6382**
The Honorable Victor Marrero
United States District Judge
500 Pearl Street, Suite 1040
New York, NY 10007

Re: *Coventry Capital v. EEA*, No. 17-cv-07417

Dear Judge Marrero:

I write on behalf of Plaintiff Coventry Capital US LLC ("Coventry") with regard to Coventry Capital's enclosed September 21, 2018 letter (the "Letter") requesting a pre-motion conference concerning Coventry's motion for a preliminary injunction. The Letter contains references to certain factual matters and exhibits that have been designated "Confidential" pursuant to the Court's March 14, 2018 Protective Order. *See* Dkt. No. 45. Because the Letter is not being filed on the Court's ECF system—per the Court's Individual Rules of Practice—Coventry has not redacted these Confidential matters from it. Accordingly, Coventry respectfully requests that the Letter not be placed on the public docket. If needed, Coventry is happy to provide a redacted version of the Letter suitable for public filing.

Respectfully submitted,

William P. Ashworth

cc: Counsel of Record