LAW OFFICES

# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

WILLIAM P. ASHWORTH
(202) 434-5683
washworth@wc.com

(202) 434-5000

FAX (202) 434-5029

HOWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/3/18

October 2, 2018

**VIA FACSIMILE (212) 805-6382**
The Honorable Victor Marrero
United States District Judge
500 Pearl Street, Suite 1040
New York, NY 10007

Re: *Coventry Capital v. EEA*, No. 17-cv-07417

Dear Judge Marrero:

I write on behalf of Plaintiff Coventry Capital US LLC ("Coventry") in response to the September 26, 2018 letter ("EEA Letter") from Defendant EEA Life Settlements, Inc. ("EEA") regarding Coventry's September 21, 2018 request for a pre-motion conference concerning its motion for a preliminary injunction ("Coventry Letter").

### I.   Coventry Faces Irreparable Harm.

Contrary to EEA's contentions, Coventry faces two distinct forms of irreparable harm. *First*, as EEA admits, a sale of the Portfolio is an "immediate" prospect. EEA Letter at 3.[1] Such a sale would vitiate Coventry's claim for specific performance and deprive Coventry of its bargained-for right to negotiate a purchase of the Portfolio. This loss is irreparable because, unlike most investment vehicles, the life insurance policies that make up the Portfolio are wholly unique and particularized to, among other things, the underlying insureds, their specific medical impairments and unique premium streams, the insurance company from which the policies were purchased, and the specific death-benefit amounts associated with each policy. *Cf. Yue v. Conseco Life Ins.*, 282 F.R.D. 469, 483–84 (C.D. Cal. 2012) (life insurance policy holders faced irreparable harm where it would be "difficult to calculate damages" for those who prevailed and "may be eligible for reinstatement" of their policy, but who "purchased a policy with another insurer" in the interim).[2]

---

[1] Although EEA insists that any sale "is far from 'imminent'" because "no contract of sale of the Portfolio has been entered into," EEA Letter at 1 n.1, this is belied by its argument that an injunction against any sale would cause it "immediate and significant harm," *id.* at 3.

[2] EEA's assertion that Coventry has an adequate remedy at law simply because a value can be ascribed to the assets it will be deprived of the opportunity to acquire is contrary to established law. *See, e.g., Carpenter Tech. Corp. v. City of Bridgeport*, 180 F.3d 93, 95–98 (2d Cir. 1999) (finding irreparable harm from threatened loss of unique property via condemnation, despite the

Hon. Victor Marrero
October 2, 2018
Page 2

It is also well-established that "monetary compensation is not likely to redress" losses of unique and valuable business opportunities. *See Space Imaging Europe Ltd. v. Spacing Imaging L.P.*, 1998 WL 190356, at *2 (S.D.N.Y. Apr. 21, 1998) (finding irreparable harm for breach of letter of intent providing plaintiff with a right of first refusal regarding a "unique[]" business opportunity, even though the venture was underway and specific investments in it had already been made). This is so because it is inherently "speculation" to calculate such factors as "future market conditions" for products that constitute "a unique, non-replicable business opportunity." *EUSA Pharma (US), Inc. v. Innocoll Pharms. Ltd.*, 594 F. Supp. 2d 570, 582 (E.D. Pa. 2009). Nor do attempts by Coventry to negotiate over the price to be paid for the Portfolio (or to quantify in its Initial Disclosures damages that may compensate for *part* of EEA's misconduct, which included a fraud on Coventry) mean that Coventry has an adequate remedy at law. Indeed, the case that EEA cites declined to find irreparable harm because, unlike here, the party's "only statements offered regarding irreparable harm" calculated the specific amount the party had lost from being precluded from trading in particular securities—the entire injury at issue. *See First Lincoln Holdings, Inc. v. Equitable Life Assur. Soc'y*, 164 F. Supp. 2d 383, 392 (S.D.N.Y. 2001).

*Second*, EEA does not dispute the facts surrounding its imminent dissipation of its only asset: (1) the Portfolio is its sole asset;[3] (2) EEA has taken the position that it is a shell company with no documents, with all documents relevant to this case held by its investment advisor or foreign affiliates over whom it claims to lack control; and (3) the investors of EEA's parent will demand their money upon a sale of the Portfolio. *See* Coventry Letter at 2. There is no reason why EEA would continue to maintain any assets upon a sale of the Portfolio, and EEA provides none. Indeed, EEA claims to be powerless with respect to its foreign affiliates, taking the position that it lacks the ability to obtain any documents from its Guernsey affiliate (despite a clear contractual right to those documents) because its half-hearted request for them was refused. *See* Dkt. No. 66 (June 12, 2018 Letter) at 8–9; Dkt. No. 75 (June 26, 2018 Letter) at 4–6. In view of these concessions, it is highly likely that EEA will be rendered judgment proof such that an award of damages in this case and any "money judgment will go unsatisfied absent equitable relief." *Alvenus Shipping Co. v. Delta Petroleum (U.S.A.) Ltd.*, 876 F. Supp. 482, 487 (S.D.N.Y. 1994). With nothing but an unelaborated claim that EEA will not transfer the proceeds in this manner, EEA Letter at 2 n.4, a preliminary injunction is needed to avoid irreparable harm.

Finally, EEA cannot evade its agreement that a breach of the Contract "may result in irreparable harm." Dkt. 31.1 (Contract) ¶ II.10.[4] It is well-established that stipulations to irreparable harm are "an additional factor weighing in favor of the conclusion that [plaintiff] had

---

fact that the owner, the city, and a third party had all negotiated over the value of that property and provided different views of its "fair market value").

[3] *Patriarch Partners Agency Servs., LLC v. Zohar CDO 2003-1*, 292 F Supp. 3d 601, 603 (S.D.N.Y. 2017) which involved a lack of evidence of *other* assets, is thus irrelevant here.

[4] The Contract's use of "may" rather than "will" is irrelevant. *See, e.g., Uni-World Capital L.P. v. Preferred Fragrance, Inc.*, 73 F. Supp. 3d 209, 236 (S.D.N.Y. 2014) (considering provision stating "that any breach of the non-compete agreement 'may result in irreparable harm'").

Hon. Victor Marrero
October 2, 2018
Page 3

made the required showing of irreparable harm." *Nat'l Elevator Cab & Door Corp. v. H & B, Inc.*, 282 F. App'x 885, 887 (2d Cir. 2008).

## II.　Coventry Is Likely To Succeed on the Merits.

EEA makes little effort to dispute Coventry's arguments that it is highly likely to succeed on the merits of its contract claim (the only claim at issue for purposes of this motion). *See* Coventry Letter at 3. Indeed, EEA does not cite *any* case law or respond to Coventry's discussion of the applicable legal framework.

On the merits, EEA hardly defends the bad-faith tactics described by Coventry in its Complaint (and supported by cited evidence). *See, e.g.*, Dkt. 31 (Complaint) ¶¶ 37–49; Ex. 2 to Coventry Letter.[5] Nor does EEA provide any direct response to Coventry's allegations and evidence that it never intended to engage in good-faith negotiations to sell the Portfolio to Coventry within the framework of the parties' Contract. *See* Exs. 3 and 4 to Coventry Letter.[6] These instances of bad-faith negotiation are more than enough to find that Coventry is likely to succeed in its claim that EEA violated its "obligation to negotiate the open issues in good faith in an attempt to reach the . . . objective within the agreed framework." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011) (quotation marks omitted). EEA also does not respond to Coventry's evidence that EEA premised negotiations on a misrepresentation regarding the Portfolio's Net Asset Value that is belied by contemporaneous documentation. *See* Dkt. 31 (Complaint) ¶¶ 31–36; Exs. 5–7 to Coventry Letter. Coventry is highly likely to succeed on this independent argument because EEA violated its obligation to negotiate in good faith by making "material representations" that were false. *L-7*, 647 F.3d at 432–33.

## III.　The Balance of Hardships Strongly Favors Coventry.

Coventry faces the immediate, irreparable harm of being permanently deprived of (1) the business opportunity to acquire these unique assets; and (2) the ability to obtain any relief once EEA renders itself judgment proof. By contrast, EEA admittedly would merely continue under the status quo. *See* EEA Letter at 3.

We will be prepared to address these issues further at the Court's convenience.

---

[5] EEA responds to only one of Coventry's assertions—that EEA ignored evidence that certain policies in the Portfolio were fraudulent and then sought to force Coventry to purchase those policies or pay their premiums despite the Contract's plain language to the contrary. EEA's claim that its investment advisor came to a different conclusion is based on a cursory analysis. *Compare* Ex. 6 to EEA Letter, *with* Dkt. 31 (Complaint) ¶¶ 40–44; Ex. 2 to Coventry Letter. It is also based on a document created on August 21, 2018, *after* Coventry's litigation counsel had raised multiple concerns regarding EEA's bad faith.

[6] EEA's decision to sell the Portfolio now—nearly 18 months after the Contract—is irrelevant to Coventry's argument that EEA never intended to complete a deal with Coventry in 2017.

Hon. Victor Marrero
October 2, 2018
Page 4

Respectfully submitted,

/s/

William P. Ashworth

cc:   Counsel of record

> The Clerk of Court is directed to enter into the public record
> of this action the letter above submitted to the Court by
> plaintiff.
>
> SO ORDERED.
>
> 10-3-18
> DATE        VICTOR MARRERO, U.S.D.J.