UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

COVENTRY CAPITAL US LLC,

      Plaintiff,

vs.

EEA LIFE SETTLEMENTS, INC., HIREN PATEL,
and VINCENT PISCAER,

      Defendants.

No. 17-cv-07417 (VM) (SLC)

**ORAL ARGUMENT
REQUESTED**

**DEFENDANTS HIREN PATEL'S AND VINCENT PISCAER'S MEMORANDUM
IN SUPPORT OF THEIR MOTION FOR RECONSIDERATION OR,
IN THE ALTERNATIVE, FOR CERTIFICATION UNDER 28 U.S.C. § 1292(B)**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................................. 1

ARGUMENT .................................................................................................................................. 3

    I.       Standard of Review.................................................................................................. 3

    II.      The Discovery Order Overlooks Crucial Facts That Warrant Reconsideration ................ 4

    III.     In the Alternative, The Discovery Order Should be Certified for Interlocutory Appeal Under 28 U.S.C. § 1292(b)................................................................................ 7

CONCLUSION............................................................................................................................. 12

# **TABLE OF AUTHORITIES**

Page

## **CASES**

*Am. Express Warehousing, Ltd. v. Transamerica Ins. Co.*,
   380 F.2d 277 (2d Cir. 1967) .................................................................................................. 7

*Am. Maplan Corp. v. Heilmayr*,
   203 F.R.D. 499 (D. Kan. 2001) ........................................................................................ 5, 10

*Capitol Records, LLC v. Vimeo, LLC*,
   972 F. Supp. 2d 537 (S.D.N.Y. 2013) .................................................................................. 11

*In re A2P SMS Antitrust Litig.*,
   No. 12-cv-2656, 2015 U.S. Dist. LEXIS 24909 (S.D.N.Y. Mar. 2, 2015) .............................. 8

*In re Bloomfield Inv. Res. Corp.*,
   315 F.R.D. 165 (S.D.N.Y. 2016) ........................................................................................... 5

*In re Potanina*,
   Nos. 14 Misc. 31, 14 Misc. 57, 2015 U.S. Dist. LEXIS 96340
   (S.D.N.Y. June 30, 2015)..................................................................................................... 10

*In re Vitamins Antitrust Litig.*,
   No. 99-197, 2000 U.S. Dist. LEXIS 17412 (D.D.C. Nov. 22, 2000) ..................................... 8

*Katz v. Carte Blanche Corp.*,
   496 F.2d 747 (3d Cir. 1974) .................................................................................................. 8

*Novick v. AXA Network, LLC*,
   No. 07-cv-7767, 2013 U.S. Dist. LEXIS 172384 (S.D.N.Y. Dec. 6, 2013) ............................ 3

*Resolution Tr. Corp. v. Deloitte & Touche*,
   145 F.R.D. 108 (D. Colo. 1992) ............................................................................................ 7

*Shcherbakovskiy v. Da Capo Al Fine, Ltd.*,
   490 F.3d 130 (2d Cir. 2007) ..................................................................................... 2, 4, 5, 10

*Strougo v. Barclays PLC*,
   334 F. Supp. 3d 591 (S.D.N.Y. 2018) .................................................................................... 3

*T.M. Patents, L.P. v. Sun Microsystems, Inc.*,
   No. 06-cv-13558, 2009 U.S. Dist. LEXIS 141231 (S.D.N.Y. Apr. 16, 2009) ........................ 3

# TABLE OF AUTHORITIES
## (continued)

Page

*Tucker v. Arthur Andersen & Co.*,
   67 F.R.D. 468 (S.D.N.Y. 1975) .................................................................................. 8

*Weber v. United States Tr.*,
   484 F.3d 154 (2d Cir. 2007) ....................................................................................... 8

## RULES, STATUTES, AND OTHER AUTHORITIES

7 Moore's Fed. Prac. § 34.14(2)(c) .................................................................................... 5

16 Wright & Miller Federal Practice & Procedure, § 3930 (1996) ................................... 9

28 U.S.C. § 1292(b) .............................................................................................. *passim*

Local Rule 6.3 .................................................................................................................. 1

## FOREIGN AUTHORITIES

*Carlyle Capital Corp. Ltd. (In Liquidation) and others v. Conway and others*,
   Royal Court of Guernsey, No. 1510, 38/2017 (4th Sept. 2017) ................................. 6

Companies Act 2006, c. 46, § 175(1)-(2) ......................................................................... 6

Financial Services and Markets Act 2000, c. 8, § 60A(1) ............................................... 9

Defendants Hiren Patel and Vincent Piscaer (together, the "Individual Defendants"), through their counsel, Seward & Kissel LLP, respectfully move for reconsideration of the Court's November 1, 2019 Decision and Order (Dkt. No. 149) (the "Discovery Order") pursuant to Local Rule 6.3, or, in the alternative, for certification of an interlocutory appeal of the Discovery Order pursuant to 28 U.S.C. § 1292(b).

## PRELIMINARY STATEMENT

The Discovery Order places Messrs. Piscaer and Patel in an untenable position, as it directs them to produce documents that they do not have and that they have no ability to access. The Individual Defendants have already produced all responsive documents in their possession, custody or control – amounting to some 1,322 pages. The Discovery Order overlooks the corporate form of the Individual Defendants' employers, who have responsive information inaccessible to the Individual Defendants. The Discovery Order further erroneously credits Coventry Capital US LLC's ("Coventry") baseless speculation about Messrs. Piscaer's and Patel's purported control over the process that led to the Boards' revocation of their access.

In May 2018, pursuant to Magistrate Judge Pitman's directive (*see* Doc. 62 at 22:20-23:3), the Individual Defendants each e-mailed the Board of Directors of their employers, EEA Fund Management (Guernsey) Limited (the "Guernsey Manager") and EEA Fund Management Limited ("EEA UK"), and requested access to their employers' electronic and hard-copy files for collection and production in response to Coventry's document requests. *See* Doc. 111 at 6-7; Doc. 66-20 (e-mail requests and responses). Those requests were denied. *See* Doc. 66-20. Messrs. Piscaer and Patel are physically blocked from accessing responsive documents. The Court appears to be under the misapprehension that the Individual Defendants have the ability to access these documents through their work computers, but that is not the case because, as noted, they are physically blocked. *See id*.

In his January 2019 opinion, Judge Pitman found that, in view of this termination of access, the Individual Defendants lacked possession, custody, or control of those materials. In so holding, Judge Pitman rejected Coventry's contention that the Individual Defendants had, "by virtue of their alleged positions" as directors at EEA UK and the Guernsey Manager, "engineered their lack of access to the documents." *See* Doc. 111 at 16. Judge Pitman found that "the record is to the contrary," as the Individual Defendants had recused themselves from the relevant votes. *See id*. This is because Guernsey and English law require the Individual Defendants to recuse themselves from voting on matters involving a conflict of interest. Moreover, mere "suspicions" about this recusal somehow being "fixed" did not satisfy Coventry's burden of proof, where Coventry could not point to any evidence supporting its allegation. *See id*.; Doc. 82 at (Tr. of Aug. 14, 2018 hearing) at 23:6-32:9.

The Individual Defendants respectfully submit that the Discovery Order erroneously gives credence to Coventry's baseless allegations. This Court erroneously concluded that the Individual Defendants "were in a position to influence" their employers' decisions and "unilaterally imposed" the revocation of their access. But the record establishes just the opposite. The Court apparently overlooked that Messrs. Piscaer and Patel were each just one director on a multi-director Board, and each, consistent with their obligations under applicable law, took no part in the Board vote concerning their requests for access. These facts do not demonstrate any "fix" – nor do they rise to the level of "control" over a company that may, as the Second Circuit has suggested, allow a court to disregard the corporate form and compel production of non-party documents. *See Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 138 (2d Cir. 2007). The Individual Defendants respectfully submit that the Court should reconsider its Discovery Order in light of these critical facts.

2

In the alternative, the Individual Defendants request that the Court certify for interlocutory appeal the issue of their possession, custody, or control of the requested documents. The Discovery Order threatens to cause significant harm to the Individual Defendants, who face an adverse inference because a third party has denied them production of documents. In view of the opposing conclusions reached by this Court and Judge Pitman, as well as the time and expense that will be saved should the Second Circuit clarify the obligations of the parties, this issue is ripe for interlocutory consideration.

## ARGUMENT

**I.     Standard of Review**

Reconsideration is appropriate where "the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Strougo v. Barclays PLC*, 334 F. Supp. 3d 591, 595 (S.D.N.Y. 2018) (citation omitted). While motions for reconsideration are not lightly granted, "[t]he decision to grant or deny a motion for reconsideration rests within the sound discretion of the district court." *Id.* (quotation marks and citation omitted). In particular, courts have reconsidered discovery orders where they had inadvertently overlooked crucial facts. *See, e.g.*, *Novick v. AXA Network, LLC*, No. 07-cv-7767, 2013 U.S. Dist. LEXIS 172384, at *17-19 (S.D.N.Y. Dec. 6, 2013) (reconsidering and vacating finding in discovery order where sanctions were imposed); *T.M. Patents, L.P. v. Sun Microsystems, Inc.*, No. 06-cv-13558, 2009 U.S. Dist. LEXIS 141231, at *3-4 (S.D.N.Y. Apr. 16, 2009) (reconsidering and reversing discovery order that precluded defendant from relying on documents to support advice-of-counsel defense).

## II.     The Discovery Order Overlooks Crucial Facts That Warrant Reconsideration

There is no dispute that the Individual Defendants are unable to physically access – let alone produce – the documents at issue in the Court's Discovery Order.  Indeed, their employers have installed a technological block that prevents Messrs. Piscaer and Patel from viewing documents on their work servers predating October 2017.[1]  The Court appears to have overlooked crucial facts underlying the termination of that access, including Messrs. Piscaer's and Patel's respective roles at their employers and their recusal from consideration of their own production requests, as mandated by applicable law.  This is evident insofar as the Court's decision repeats several assertions made by Coventry that are misleading or simply not true – and that are belied by the record.  The Court should reconsider its decision in view of these inaccuracies, as its Discovery Order improperly disregards the legal distinction between a corporation and its directors, and places the Individual Defendants at personal and professional risk.

As an initial matter, the Court appears to have credited Coventry's incorrect suggestion that the Guernsey Manager and EEA UK are "run" by Messrs. Piscaer and Patel.  *See* Doc. 122 at 18.  There is no support for that and it is incorrect as a matter of fact.  In so doing, the Court overlooked that neither Mr. Patel nor Mr. Piscaer have control over (or are the "alter egos" of) EEA UK or the Guernsey Manager, which is the standard embraced by the Second Circuit when considering a motion to compel against an individual director or officer.  *See Shcherbakovskiy*, 490 F.3d at 139 ("When an action is against an officer individually, and not also against the corporation, production may be denied unless there is evidence that the officer is the 'alter ego'

---

[1] While the Individual Defendants agree with the Court that, as directors of the company, their roles are not analogous to a "cleaning person" pilfering company documents, the fact remains that the Individual Defendants could not before and cannot now access the requested documents, and have been informed that producing the documents would amount to misappropriation.

4

of the corporation.") (quoting 7 Moore's Fed. Prac. §34.14(2)(c) and citing *Am. Maplan Corp. v. Heilmayr*, 203 F.R.D. 499, 502 (D. Kan. 2001), which set aside order compelling president to produce company documents where there was no evidence that president was "alter ego" of company, and order compelling production "disregards [the company's] corporate form and its existence as a distinct legal entity")).[2]

For example, while Mr. Piscaer is a director of the Guernsey Manager (*see* Discovery Order at 3), he is only one of four directors of that entity, and there is nothing in the record suggesting that he controls the board or the Guernsey Manager generally. *See Shcherbakovskiy*, 490 F.3d at 137-39 (remanding for further factfinding on foreign law and whether chairman of the board was "alter ego" of company or otherwise controlled the board). Likewise, Mr. Patel does not control his foreign employer, EEA UK, but rather is one of *two* directors, along with Simon Shaw (who serves as Chairman of the Board). *See* Doc. 70 at 5. Further, while the Court is correct that Mr. Patel (along with Mr. Shaw) is one of two directors of EEA UK's parent, Anath Capital Group Limited ("Anath"), the Discovery Order omits the crucial fact – misleadingly concealed by Coventry – that Anath is in turn wholly owned by Melquart Limited, whose directors and owners are Mr. Shaw and his wife, Razena Shaw. *See* Doc. 70 at 5 and n.3. Mr. Patel accordingly has no authority to unilaterally direct the activities of either Anath or EEA UK. *Compare In re Bloomfield Inv. Res. Corp.*, 315 F.R.D. 165, 168 (S.D.N.Y. 2016) (Marrero, J.) (unlike the situation here, the individual respondent in *Bloomfield* was found to "control" third-party company where, among other things, respondent held majority ownership of funds

---

[2] While the Court is correct that, as directors, Messrs. Piscaer and Patel "are not total strangers" to their employers, *Shcherbakovskiy* and other decisions indicate that a far higher standard is required for a court to disregard the corporate form and order an individual officer or director to produce non-party documents. *See Shcherbakovskiy*, 490 F.3d at 139; *Am. Maplan*, 203 F.R.D. at 502.

who owned 100% of company's shares, and where he was referred to as the "*ultimate controlling party*" in company's audited annual report) (emphasis added).

In addition, the Court overlooked the critical fact that Mr. Piscaer and Mr. Patel recused themselves from their employers' decisions concerning their access to documents – a fact that Coventry conveniently glossed over in its Objections. *See* Doc. 70 at 8; Doc. 125 at 6 n.5. Such recusals were not only acts of prudence, but were also compelled by the Individual Defendants' obligations under English. and Guernsey law, which – much like U.S. law – requires directors to recuse themselves from decision-making involving a potential conflict of interest. *See, e.g.*, Companies Act 2006, c. 46, § 175(1)-(2) ("A director of a company must avoid a situation in which he has, or can have, a direct or indirect interest that conflicts, or possibly may conflict, with the interest of the company," and this duty applies "in particular to the exploitation of any property [or] information of a company"); *Carlyle Capital Corp. Ltd. (In Liquidation) and others v. Conway and others*, Royal Court of Guernsey, No. 1510, 38/2017 (4th Sept. 2017) (duties owed by the directors of a Guernsey company are fundamentally the same as those under English common law, including duty to avoid a conflict of interest); *see also* Doc. 82 (Aug. 14, 2018 Tr.) at 23:6-12 ("COURT: Well, why wouldn't they have a conflict of interest though with respect to the foreign entities of which they're directors? I mean presumably I don't know with UK lawyers but I'm confident that they have the same fiduciary duty to the entity as directors that exist in the United States. So why is recusing themselves inappropriate given the fact that they have a conflict?").

As such, the Individual Defendants were not, as the Court mistakenly found, "in a position to influence" their employers' decision to terminate access. *See* Discovery Order at 10. This denial of access may have been a "unilaterally imposed restriction," but it was unilaterally

6

imposed by the Individual Defendants' employers, *not* by the Individual Defendants themselves. *See id.* (citing *Resolution Tr. Corp. v. Deloitte & Touche*, 145 F.R.D. 108, 110 (D. Colo. 1992), where party resisting production had "absolute and unrestricted ability to obtain [federal banking agency's] documents on demand" under express terms of federal banking statute).

Because EEA UK and the Guernsey Manager – foreign, non-party entities – have unilateral and total possession, custody and control of their documents, the proper avenue for Coventry to seek those documents is through the Hague Convention. That is precisely what Coventry has done, albeit grudgingly and only in response to Judge Pitman's order this past July. *See* Doc. 138. To hold, based on Coventry's exaggeration of Messrs. Piscaer's and Patel's corporate roles, that the Individual Defendants must produce documents that they cannot physically obtain, or face the severe consequence of an adverse inference at trial, is error and would be unjust. The Court should exercise its discretion to reconsider the Discovery Order in light of the facts as set forth above, and reject Coventry's objections to Judge Pitman's January 2019 order.

### III. In the Alternative, The Discovery Order Should be Certified for Interlocutory Appeal Under 28 U.S.C. § 1292(b)

Should this Court deny the Individual Defendants' motion for reconsideration of the Discovery Order, the Individual Defendants respectfully request that the Court certify the Discovery Order for interlocutory appeal under 28 U.S.C. § 1292(b). While certification of a discovery order is admittedly uncommon, it is nonetheless warranted in exceptional circumstances such as these, where the Discovery Order places an extraordinary burden on the Individual Defendants. *See Am. Express Warehousing, Ltd. v. Transamerica Ins. Co.*, 380 F.2d 277, 282 (2d Cir. 1967) ("When a discovery question is of extraordinary significance or there is extreme need for reversal of the district court's mandate before the case goes to judgment, there

are escape hatches from the finality rule: a certification by the district court under 28 U.S.C. § 1292(b) . . . or an extraordinary writ."); *Weber v. United States Tr.*, 484 F.3d 154, 159 (2d Cir. 2007) (Section 1292(b) intended " to assure the prompt resolution of knotty legal problems" that "m[ight] disappear in the light of a complete and final record") (internal quotation marks and citation omitted); *In re Vitamins Antitrust Litig.*, No. 99-197, 2000 U.S. Dist. LEXIS 17412, at *23-24 (D.D.C. Nov. 22, 2000) (certifying for interlocutory appeal an order ruling that jurisdictional discovery should proceed under Federal Rules rather than the Hague Convention).

Under 28 U.S.C. § 1292(b), a district court may certify for interlocutory appeal an order which: (1) involves a "controlling question of law;" (2) "as to which there is substantial ground for difference of opinion;" and where (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." The legal issue raised by the Discovery Order – whether, under Rule 34, a director of a non-party company he does not control has "possession, custody, or control" over documents to which his physical access has been terminated – satisfies each of these requirements.

*First*, this issue is a "controlling question of law." A legal question need not necessarily lead to reversal on appeal to be "controlling," but rather must be "serious to the conduct of the litigation, either practically or legally." *See Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir. 1974); *see also In re A2P SMS Antitrust Litig.*, No. 12-cv-2656, 2015 U.S. Dist. LEXIS 24909, at *11-13 (S.D.N.Y. Mar. 2, 2015) (a "controlling question" is one that "could significantly affect the conduct of the action"). Courts will consider, among other things, "the avoidance of harm to a party pendente lite from a possibly erroneous interlocutory order and the avoidance of possibly wasted trial time and litigation expense." *Katz*, 596 F.2d at 755-56; *see also Tucker v. Arthur Andersen & Co.*, 67 F.R.D. 468, 485 (S.D.N.Y. 1975) (citing *Katz*

8

favorably); 16 Wright & Miller, Federal Practice & Procedure, § 3930 at 426 (1996) ("A steadily growing number of decisions . . . have accepted the better view that a question is controlling, even though its disposition might not lead to reversal on appeal, if interlocutory reversal might save time for the district court, and time and expense for the litigants.").

The Discovery Order has the potential to cause substantial harm to the Individual Defendants. As noted above, the Guernsey Manager and EEA UK have completely terminated the Individual Defendants' access to the documents at issue, meaning that Messrs. Piscaer and Patel cannot physically reach the materials that this Court has now directed them to produce. As such, the Individual Defendants face a Sophie's choice: find a way to bypass the technological restriction on their access to the documents (which they cannot do), in defiance of their employers and their fiduciary obligations under applicable English and Guernsey law, or else face an adverse inference at trial which could cause a jury to find them liable for fraud.

In either case, the Individual Defendants risk serious personal and professional consequences. Indeed, the Guernsey Manager and EEA UK have already informed Messrs. Piscaer and Patel that they would view such production as a misappropriation of company property. Such misappropriation would have obvious reputational consequences, may violate English regulations (*see* Doc. 70, citing APER 4.1.10G; APER 4.1.2G), and would be a matter that relevant regulators (including the Financial Conduct Authority ("FCA") in England and the Guernsey Financial Services Commission) would take into account in assessing whether the Individual Defendants were "fit and proper" to work in the financial services industry in those jurisdictions. *See, e.g.*, Financial Services and Markets Act 2000, c. 8, § 60A(1). And if the Individual Defendants remain unsuccessful in their attempts to obtain the documents, the adverse inference imposed by the Discovery Order conceivably could result in a judgment and significant

9

monetary damages against them.  In addition to tarnishing their reputations in their home countries, this could likewise be fatal to their careers.[3]

*Second*, there exists a "substantial ground for a difference of opinion" concerning whether the Individual Defendants have the practical ability to obtain the documents requested.  Certainly, the fact that this Court set aside Judge Pitman's original order demonstrates a difference of opinion on this question.  There are also a number of cases, both within and outside this Circuit, which support the conclusion that a director who is rebuffed in his attempts to obtain documents from the company does not have the "practical ability" to obtain those materials under Rule 34 where that director is not the "alter ego" of the company.  *See, e.g.*, *Shcherbakovskiy*, 490 F.3d at 138-39 (chairman of the board did not necessarily control documents absent evidence that company was his alter ego or that investment gave him "undisputed control of the board"); *In re Potanina*, Nos. 14 Misc. 31, 14 Misc. 57, 2015 U.S. Dist. LEXIS 96340, at *11-12 (S.D.N.Y. June 30, 2015) (denying motion to compel where officer had no "practical ability" to obtain requested documents after request was refused by company); *Am. Maplan*, 203 F.R.D. at 502 (motion to compel improper absent evidence that company president was "alter ego" of non-party corporation).  Moreover, while the Individual Defendants maintain that the Second Circuit's opinion in *Shcherbakovskiy* is dispositive of this issue, an interlocutory appeal would allow the Court of Appeals to clarify an individual director's discovery obligations under the unique circumstances present in this case.

*Third*, an immediate appeal from the Discovery Order would materially advance the ultimate termination of the litigation.  This factor is in practice "closely connected to the first

---

[3] For example, the FCA requires candidates for a regulated "Senior Management" function to disclose, among other things, whether the candidate has "ever been adjudged by a court or tribunal (whether criminal, civil or administrative) for any fraud, misfeasance, negligence, wrongful trading or other misconduct").  *See* FCA, Long Form A, *available at* https://www.handbook.fca.org.uk/form/sup/SUP_10C_ann_03_Long_A_UK_20181210.pdf.

10

factor," because it too asks whether "a definitive answer" by the Second Circuit may save "the Court and parties vast amounts of expense and time." *Capitol Records, LLC v. Vimeo, LLC*, 972 F. Supp. 2d 537, 551, 554 (S.D.N.Y. 2013) (internal quotations omitted).  Before the entry of the Discovery Order, the Individual Defendants had nearly completed their production of documents from their personal devices – a process which has taken the better part of two years due to Coventry's service of four separate sets of document requests and its near-continuous motion practice in this matter.  Further, Hague Convention requests seeking the documents at issue have already been issued to the central authorities in the UK and Guernsey, as directed by Judge Pitman in July 2019.  *See* Doc. 138.  Indeed, the Individual Defendants understand that, in Guernsey, Coventry has already obtained a provisional order (without notice) for the production of documents.

During these last two years, the Individual Defendants have gone to great lengths to comply with their discovery obligations in a fulsome and timely manner, despite their position that Coventry's claims against them should be dismissed for lack of personal jurisdiction.  Messrs. Piscaer and Patel are eager to renew their motion to dismiss on personal jurisdiction grounds (which was denied without prejudice in March 2018) and close this chapter of their lives.  An interlocutory appeal would greatly clarify their obligations in this proceeding, allow fact discovery to finally come to an end, and permit the parties to proceed to long-overdue dispositive briefing.

In short, the Discovery Order has the potential to seriously disrupt the course of this litigation, as well as Messrs. Piscaer's and Patel's personal and professional lives.  In view of the conflicting authority as to what constitutes "practical ability" under Rule 34, the parties would be well-served by gaining clarity from the Second Circuit on this issue.  As such, should this Court

deny their motion for reconsideration, the Individual Defendants respectfully request that the Court certify the Discovery Order for interlocutory appeal.

## CONCLUSION

For the foregoing reasons, the Individual Defendants respectfully request that the Court grant their motion to reconsider the Discovery Order and vacate it, or, in the alternative, certify the Discovery Order for interlocutory appeal under 28 U.S.C. § 1292(b), and grant the Individual Defendants such other and further relief as the Court deems just and proper.

New York, New York
November 15, 2019

Respectfully submitted,

SEWARD & KISSEL LLP

By: s/ Mark J. Hyland
    Mark J. Hyland
    Laura E. Miller
    Paul B. Koepp

One Battery Park Plaza
New York, New York 10004
(212) 574-1200

*Attorneys for Defendants Hiren Patel and Vincent Piscaer*