UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

COVENTRY CAPITAL US LLC, :
:
Plaintiff, :
:
- against - :
:
EEA LIFE SETTLEMENTS INC., et al., :
:
Defendants. :

------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/11/20

17 Civ. 7417 (VM)

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

Plaintiff Coventry Capital US LLC ("Coventry") brought this action against defendants EEA Life Settlements, Inc. ("EEA"), Vincent Piscaer ("Piscaer"), and Hiren Patel ("Patel," and together with Piscaer, "the Individual Defendants," and, collectively, "Defendants"), alleging that Defendants engaged in a pattern of fraudulent conduct aimed at undermining the negotiation of a contract to sell a portfolio of life insurance policies to Coventry. (See "Complaint," Dkt. No. 31.) The Complaint brings claims of (1) breach of contract (against EEA), (2) fraud/intentional misrepresentation (against all Defendants), and (3) aiding and abetting fraud/intentional misrepresentation (against the Individual Defendants).

On January 24, 2019, Magistrate Judge Pitman denied motions by Coventry to compel production by EEA and to impose sanctions on the Individual Defendants for failure to produce

1

certain documents. (See "Magistrate Judge Pitman's Decision," Dkt. No. 111.) Coventry objected. ("Objection," Dkt. No. 122.) On November 1, 2019, the Court sustained Coventry's objection and set aside Magistrate Judge Pitman's Decision. (See "Discovery Order," Dkt. No. 149.) In the Discovery Order, the Court held that Coventry is entitled to an adverse inference in the event the Individual Defendants do not produce certain documents held by non-parties EEA Fund Management (Guernsey) Limited (the "Guernsey Manager") and EEA Fund Management Limited ("EEA UK"). The Court also granted Coventry's motion to compel production by EEA of certain documents held by the Guernsey Manager.

Now before the Court is the Individual Defendants' Motion for Reconsideration of the Discovery Order or, in the Alternative, for Certification under 28 U.S.C. Section 1292(b). ("Individual Defendants' Motion," Dkt. No. 155). Also before the Court is a letter from EEA requesting that the Court reconsider the Discovery Order or, in the alternative, clarify the Discovery Order. ("EEA's November 15 Letter," Dkt. No. 157.) The Court construes EEA's letter as a motion for reconsideration of the Discovery Order pursuant to Federal Rule of Civil Procedure 59(e) and Local Rule 6.3 (the "EEA Motion").

For the reasons discussed below, the Individual Defendants' Motion is GRANTED insofar as a more developed factual record is necessary to determine whether the Individual Defendants have control over the requested documents and whether sanctions for nonproduction are appropriate; the Individual Defendants' Motion is DENIED as to the request for reconsideration on the question of the legal standard applicable to assessing an individual's control over company documents; and the EEA Motion is DENIED.

## I.   BACKGROUND

### A.   THE INDIVIDUAL DEFENDANTS' MOTION

On November 15, 2019, the Individual Defendants filed a motion for reconsideration of the Discovery Order pursuant to Local Rule 6.3 and, alternatively, certification of an interlocutory appeal of the Discovery Order pursuant to Section 1292(b). The Individual Defendants argue that the Discovery Order overlooked facts indicating that they lack control of the Guernsey Manager and EEA UK. ("Memorandum," Dkt. No. 156, at 5.) They emphasize that Piscaer is only one of four directors of the Guernsey Manager, Patel is only one of two directors of EEA UK and EEA UK's parent Anath Capital Group ("Anath"), and that Anath is wholly owned by Melquart Limited ("Melquart"), whose owners and directors are Simon Shaw and Razena Shaw. (Id.) Additionally, the Individual

Defendants claim that the Discovery Order overlooked that the Individual Defendants recused themselves from the companies' decisions concerning their access to documents. (Id. at 6.) Moreover, the Individual Defendants assert that English and Guernsey law required them to do so to avoid a potential conflict of interest. (Id.) The Individual Defendants argue that these facts collectively indicate that they are not EEA UK's or the Guernsey Manager's "alter egos," which Individual Defendants maintain is the standard for determining whether an individual has control over a company's documents. (Id. at 4-5 & n.2.) Ultimately, the Individual Defendants claim that, in light of these facts, Coventry should not be entitled to an adverse inference at trial for the Individual Defendants' failure to produce. (Id. at 7.)

In the alternative, the Individual Defendants ask the Court to certify the Discovery Order for interlocutory appeal under Section 1292(b). (Id. at 7.) First, the Individual Defendants argue that whether a director of a non-party company that he does not control must produce documents to which his physical access was terminated is a controlling question of law. They reason that the Court's ruling on this issue may cause substantial harm to the Individual Defendants by forcing them to either violate their fiduciary obligations to their employers to obtain the documents or face an adverse

4

inference at trial. (Id. at 9-10.) Second, they claim that the existence of a substantial ground for difference of opinion on this issue is evinced by Magistrate Judge Pitman's Decision and cases in which courts declined to hold that officers or directors must produce documents absent evidence that the individual was the "alter ego" of the company. (Id.) Third, the Individual Defendants assert that an appeal would promote termination of the litigation by allowing fact discovery to conclude. (Id.)

On December 4, 2019, Coventry filed its opposition to the Individual Defendants' Motion. ("Opposition," Dkt. No. 172.) Coventry asserts that the Court previously considered each of the facts that the Individual Defendants claim the Court overlooked. Coventry argues that the Court correctly rejected the Individual Defendants' argument that they were relieved of an obligation to produce documents to which they initially had access in the ordinary course of business when, after Magistrate Judge Pitman ordered production, EEA UK and the Guernsey Manager decided to restrict the Individual Defendants' access. Specifically, Coventry notes that the Court already rejected the Individual Defendants' attempt to disclaim responsibility for or control over their employers' decisions to terminate their access. With regard to the Individual Defendants' board positions, Coventry maintains

that the Court recognized that Patel was one of two directors of EEA UK and Anath and that Piscaer was a director of the Guernsey Manager. Coventry deems irrelevant that Patel is not a director of Anath's parent company. In addition, Coventry claims the Individual Defendants should not now be asserting, for the first time, that English and Guernsey law required them to recuse themselves. According to Coventry, the Discovery Order is consistent with decisions from within the Second Circuit which hold that a director or officer has practical access to a non-party's documents if he has access to them in the ordinary course of business. Coventry contends that whether an officer or director is an "alter ego" of a company is only one of many relevant considerations that may support an order to produce. Coventry also argues that the circumstances may warrant an adverse-inference sanction even absent a finding that the Individual Defendants had access to the documents in the ordinary course of business.

Coventry asserts that the Court should deny the Individual Defendants' request that it certify the Discovery Order for interlocutory appeal. First, Coventry claims that an appeal would not raise a controlling question of law but merely a factual determination. Even if the appeal presented a novel legal question, Coventry maintains that such a question would not be controlling because it would not result

in dismissal or substantially alter the conduct of the litigation, including discovery. Second, Coventry denies the possibility of any difference of opinion regarding the legal standard. Finally, Coventry contends that an appeal of the Discovery Order would delay the ultimate termination of the litigation.

On December 11, 2019, the Individual Defendants filed their reply memorandum in support of the Individual Defendants' Motion. ("Reply," Dkt. No. 176.) First, the Individual Defendants claim that Coventry is not disputing their lack control over EEA UK or the Guernsey Manager, that they recused themselves from their employers' decisions regarding their access to documents, or that local law required those recusals. Instead, according to the Individual Defendants, Coventry incorrectly claims that the Court already considered these facts and/or should not consider them at this stage. In response to Coventry's claim that the Individual Defendants are presenting arguments about local law for the first time, the Individual Defendants note that Magistrate Judge Pitman raised the matter at oral argument on Coventry's motion for sanctions. Second, the Individual Defendants argue that, despite their initial ability to view the documents, they nonetheless had to -- and did -- seek their employers' cooperation to collect and produce that

electronically stored information. Third, with regard to the applicable legal standard, the Individual Defendants insist that whether they were the "alter egos" of EEA UK and the Guernsey Manager is dispositive under Shcherbakovskiy v. Da Capo Al Fine, Ltd., 490 F.3d 130 (2d Cir. 2007).

The Individual Defendants maintain that they satisfy the grounds for certification under Section 1292(b). First, they argue that an appeal would raise questions about the legal import of the facts in this case. They claim that such legal issues are controlling insofar as their resolution may prevent serious professional and personal harm to the Individual Defendants. Second, they assert that tension between the Discovery Order and cases applying the alter ego rule demonstrates a substantial ground for difference of opinion. Finally, the Individual Defendants argue that certification would expedite the litigation by allowing them to proceed to brief whether the Court has personal jurisdiction over them. They also claim that it would prevent a situation in which the litigation is prolonged because of a post-trial determination by the Second Circuit that an adverse inference was inappropriate.

Along with their reply brief, Individual Defendants submitted, as an exhibit, a December 5, 2019 letter from Simmons & Simmons LLP, counsel for the Guernsey Manager and

EEA UK, to counsel for the Individual Defendants. ("Simmons & Simmons Letter," Dkt. No. 177-1.) The reply brief cites the Simmons & Simmons letter as evidence contradicting the Court's finding that the Individual Defendants had the ability to influence their employers' decisions to terminate their access.

By letter dated December 13, 2019, Coventry argues that the Court should disregard the Simmons & Simmons Letter because (1) under Federal Rule of Civil Procedure 72(a) ("Rule 72(a)"), the district court cannot consider evidence not presented to the magistrate judge; (2) new evidence cannot be presented in a reply brief; and (3) new evidence cannot be presented in connection with a motion for reconsideration. ("Coventry's December 13 Letter," Dkt. No. 181.) If the Court considers the letter, Coventry asks the Court to also consider Coventry's arguments regarding the letter in a then-forthcoming brief that Coventry filed in connection with a separate motion in this case.

By letter dated December 16, 2019, the Individual Defendants responded that the letter is not new evidence because it reaffirms that the Individual Defendants do not have access to the documents. ("Individual Defendants' December 16 Letter," Dkt. No. 182.)

B.   EEA'S MOTION

By letter dated November 15, 2019, EEA requested, pursuant to Federal Rule of Civil Procedure 59(e) and Local Rule 6.3, that the Court reconsider the Discovery Order or, alternatively, clarify the Discovery Order. EEA asserts that the Discovery Order overlooked Judge Pitman's reasoning that EEA lacks the practical ability to obtain documents from the Guernsey Manager because the Guernsey Manager, rightly or wrongly, denies that EEA has a contractual right to the documents. EEA also claims that the Discovery Order ignored cases from within the Second Circuit in which courts held that, when a non-party entity denies an individual's request for documents, that individual lacks the practical ability to obtain the requested documents. Further, EEA argues that Alexander Interactive, Inc. v. Adorama, Inc., No. 12 Civ. 6608, 2014 WL 71472, at *4 (S.D.N.Y. Jan. 6, 2014), one of the cases cited in the Discovery Order, actually supports a determination that EEA has no duty to produce documents held by the Guernsey Manager because the entities are separate, on different continents, and lack control over one another. Similarly, EEA maintains that its limited contractual right to inspect documents held by the Guernsey Manager is distinguishable from the explicit document sharing obligation at issue in In re NTL, Inc. Sec. Litig., 244 F.R.D. 179, 181

(S.D.N.Y. 2007), another case on which the Discovery Order relied. Finally, and in the alternative to reconsideration, EEA asks the Court to clarify the categories of documents it should request from the Guernsey Manager. Specifically, EEA asks the Court to clarify its contractual right to "information and explanations" from the Guernsey Manager and whether EEA must request internal Guernsey Manager communications, to which EEA claims it lacks access in the ordinary course of business. (Discovery Order at 12.)

By letter dated November 19, 2019, Coventry responded to EEA's November 15 Letter. ("Coventry's November 19 Letter," Dkt. No. 165.) Coventry contends that EEA's request for reconsideration fails as a matter of law because it presents arguments that the Court already considered and correctly rejected. First, Coventry argues that the Court specifically acknowledged and rejected the argument that the Guernsey Manager's denial of EEA's contractual right to certain documents relieves EEA of the obligation to produce those documents. Relatedly, Coventry contends that the Court correctly held that a party must produce documents that it has a contractual right to obtain from a non-party. Coventry argues that, contrary to EEA's characterization, Alexander Interactive is fully consistent with the proposition for which the Court cited it -- that contracts between a party

11

and non-party are relevant to the party's obligation to produce documents held by the non-party. (See id. (citing 2014 WL 61472, at *3).) In addition, Coventry points out that Alexander Interactive is distinguishable from the present case because no written agreements between the party and non-party in that case provided a basis for document production. (See id. (citing 2014 WL 61472, at *4).) Coventry argues that EEA's attempt to analogize this case to In re NTL fails because the Court already rejected the argument that the Management Agreement provides EEA only a limited right to inspect documents. Third, Coventry argues that the cases from within the Second Circuit that EEA claims the Court ignored are not relevant because they did not involve parties with a contractual right to obtain documents. Finally, Coventry argues that EEA's request for clarification is an impermissible attempt to re-argue that the clause in the Management Agreement, which entitles EEA to "information" from the Guernsey Manager, does not entitle it to obtain documents. (Id.)

## II.    LEGAL STANDARD

Local Rule 6.3 governs reconsideration, which is "intended to 'ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters.'"

SEC v. Ashbury Capital Partners, L.P., No. 00 Civ. 7898, 2001 WL 604044, at *1 (S.D.N.Y. May 31, 2001) (quoting Carolco Pictures, Inc. v. Sirota, 700 F. Supp. 169, 170 (S.D.N.Y. 1988)). When assessing a motion for reconsideration, a district court must "narrowly construe and strictly apply" Local Rule 6.3 in order to "avoid duplicative rulings on previously considered issues" and to prevent the rule from being used to advance theories not previously argued or as "a substitute for appealing a final judgment." Montanile v. Nat'l Broad. Co., 216 F. Supp. 2d 341, 342 (S.D.N.Y. 2002); see also Shamis v. Ambassador Factors Corp., 187 F.R.D. 148, 151 (S.D.N.Y. 1999).

Reconsideration is "an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." In re Health Mgmt. Sys., Inc. Sec. Litig., 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000). Accordingly, the Second Circuit has held that the standard for granting a motion to reconsider "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked -- matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). "The major grounds justifying reconsideration

are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" <u>Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.</u>, 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 4478 at 790 (2d ed.)); <u>accord</u> <u>Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.</u>, 729 F.3d 99, 104 (2d Cir. 2013). "[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." <u>Shrader</u>, 70 F.3d at 257; <u>see</u> also <u>Analytical Surveys, Inc. v. Tonga Partners, L.P.</u>, 684 F.3d 36, 52 (2d Cir. 2012) (noting that reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple" (internal quotation marks omitted)).

The decision to grant or deny a motion for reconsideration rests within "the sound discretion of the district court." <u>Aczel v. Labonia</u>, 584 F.3d 52, 61 (2d Cir. 2009) (quoting <u>Nemaizer v. Baker</u>, 793 F.2d 58, 61–62 (2d Cir. 1986)).

## III.    **DISCUSSION**

A.   THE INDIVIDUAL DEFENDANTS' MOTION

The Individual Defendants urge reconsideration on the basis that the Court overlooked facts relevant to their control over documents held by the Guernsey Manager and EEA UK. In the Discovery Order, the Court held that the Individual Defendants had control over the documents and "should not receive the benefit of EEA UK and the Guernsey Manager's purported revocation of access to the documents." (Discovery Order at 9-10.) The Court reasoned that the revocation, which occurred in response to Judge Pitman's order compelling production, was "the sort of 'unilaterally imposed restriction' by a source that does not supply a valid defense to production . . . ." (Id. (citing Resolution Tr. Corp. v. Deloitte & Touche, 145 F.R.D. 108, 110 (D. Colo. 1992).) The Court also rejected the Individual Defendants' argument that they would have to misappropriate the documents from the Guernsey Manager and EEA UK in order to produce them. Ultimately, the Court held that an adverse-inference sanction would be imposed if the Individual Defendants do not produce the requested documents. These conclusions and holdings were based on the Court's findings that the Individual Defendants -- by virtue of their positions as officers and/or directors -- "had access to or control over the documents whose

15

production Coventry seeks, or at minimum were in a position to influence a decision by EEA UK and the Guernsey Manager as to whether or not to comply with the Court's production order." (Id. at 10-11.)

The Individual Defendants' factual arguments -- in particular, their argument that local law required them to recuse themselves from their employers' decisions concerning their access to documents -- indicate that the questions of the Individual Defendants' control of the discovery materials and the appropriateness of sanctions require more searching factual examination. See e.g., Shcherbakovskiy v. Da Capo Al Fine, Ltd., 490 F.3d 130, 139 (2d Cir. 2007) (holding that a finding of control could not be sustained without further explanation where individual officer claimed local law prevented production); Shcherbakovskiy v. Seitz, No. 03-cv-1220, 2010 WL 3155169, at *11-12 (S.D.N.Y. 2010) (on remand, considering local law in assessing appropriateness of sanctions and, in particular, nonproducing party's state of mind), aff'd, 450 F. App'x 87 (2d Cir. 2011); 8B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 2210 (3d ed.)(discussing relevance of foreign law to imposition of discovery sanctions).[1]

---

[1] In accordance with Rule 72(a), the Court declines to consider the Simmons & Simmons letter.

16

Although the Individual Defendants' prior submissions to this Court did not clearly present this particular argument, it is not a wholly new theory of the case. The Individual Defendants previously argued that they lacked control over and access to the documents, and the record reflects that Judge Pitman raised local law considerations at oral argument on Coventry's motion for sanctions. (See Dkt. No. 82, at 23:6-12; Dkt. No. 125.) Accordingly, the Court exercises its discretion to accept the Individual Defendants' belated submission.

At the same time, however, the Court is mindful of the possibility that inconsistent or belated defenses to nonproduction may represent nothing more than manufactured, last-minute excuses for a prior decision not to produce. See Shcherbakovskiy v. Seitz, 2010 WL 3155169, at *11-12 ("The suspicious and strategic timing of Plaintiff's invocation of [local] law and his assertions that he could not obtain [the company's] documents without the board's consent further support a finding of willfulness and bad faith"). A more developed factual record could facilitate the credibility determinations involved in assessing the Individual Defendants' control over the documents and the appropriateness of sanctions.

17

The Individual Defendants' argument regarding the applicable standard for evaluating individual officers' and directors' control over documents represents an attempt to relitigate a previously decided issue. (See Discovery Order at 9-10 (discussing standard for determining control).) Accordingly, the Court will not reconsider the Discovery Order on this basis.[2]

Finally, because the Court grants the Individual Defendants' Motion insofar as a more developed factual record is necessary to determine whether sanctions for nonproduction are appropriate, the Court need not consider the Individual Defendants' alternative request for certification under Section 1292(b).

B.    EEA'S MOTION

At the outset, the Court notes that EEA's argument appears principally to express disagreement with the Court's ruling, rather than facts or controlling law the Court overlooked. EEA takes issue with the Court's conclusion that EEA has an obligation to produce documents held by the

---

[2] In any event, the Individual Defendants' argument regarding the applicable standard is unavailing. In the case on which Individual Defendants' argument relies, Shcherbakovskiy v. Da Capo Al Fine, Ltd., the Second Circuit vacated a dismissal sanction because it was imposed without written findings or consideration of lesser sanctions. See 490 F.3d at 140. The court stated, in dicta, that a finding that an individual is an alter ego of a company, "could support" ordering the individual to produce company documents, not that such a finding was required. Id. at 139.

Guernsey Manager based on the factual record and controlling law. Even so, EEA has failed to present "an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice" sufficient to warrant reconsideration of the Discovery Order. Kolel Beth, 729 F.3d at 104.

First, EEA has not identified any new evidence or any data that the Court overlooked. The Court explicitly recognized Judge Pitman's conclusion that EEA could not be compelled to produce documents held by the Guernsey Manager because the Guernsey Manager denies EEA's contractual right to access the documents and refuses to provide them to EEA. (See Discovery Order at 5, 11, 13.) However, the Court reasoned that the Guernsey Manager is contractually obligated to provide documents to EEA and, "[a]lthough the Guernsey Manager has represented its intent not to comply with [that] obligation, . . . th[e] contractual obligation is dispositive as to [EEA's] control over the documents." (See id. at 13.)

Second, EEA has not identified any "controlling decisions . . . that the court overlooked." Shrader, 70 F.3d at 257. None of the cases to which EEA cites in its letter-brief postdate the November 1, 2019 Discovery Order and, accordingly, do not indicate that the law has changed since the Court issued the Discovery Order. Nor do they suggest

19

that the Court's decision was clearly erroneous. In In re NTL, the court based a finding of control on a contract that provided a specific right to obtain documents needed to comply with legal obligations. 244 F.R.D. at 181. It does not follow, however, that a more general contractual right to obtain documents is insufficient to support a finding of control. EEA's reliance on Alexander Interactive is similarly misplaced because that case did not involve any "written agreements between [the party] and [the non-party] that would provide a basis for document production." 2014 WL 61472, at *4. In addition, none of the cases that EEA cites held that, under Federal Rule of Civil Procedure 34, courts cannot order a party with a contractual right to a non-party's documents to produce those documents if the non-party has previously denied the party's requests. See Shcherbakovskiy v. Da Capo Al Fine, 490 F.3d 130, 139 (2d Cir. 2007) (reasoning that a court could order an individual to produce company documents if Russian law permits production and the individual has control over the company); In re Application of Potanina, No. 14 Misc. 31, 2015 WL 4476612, at *2-3 & n.4 (S.D.N.Y. June 30, 2015) (crediting individual officer's testimony regarding limitations on his access and authority and reasoning that an order to produce would be inappropriate in light of considerations unique to discovery under 28 U.S.C. § 1782);

M'Baye v. N.J. Sports Prod., Inc., No. 06-cv-3439, 2008 WL 1849777 (S.D.N.Y. Apr. 21, 2008) (no mention of contractual right).

In sum, the Court finds no new facts or controlling law that might reasonably be expected to alter the Discovery Order. See Local Rule 6.3; Shrader, 70 F.3d at 257. The Court therefore concludes that reconsideration is not warranted in this case.

In the alternative, EEA asks the Court to clarify its contractual right to "information and explanations" from the Guernsey Manager and whether EEA must request internal Guernsey Manager communications, to which EEA claims it lacks access in the ordinary course of business.[3] Implicit in the Discovery Order and the preceding discussion is the conclusion that "information and explanations" include documents. (See Discovery Order at 12-13.) Thus, the Discovery Order requires EEA to request from the Guernsey Manager all responsive documents held by the Guernsey Manager.

**IV.    ORDER**

Accordingly, it is hereby

---

[3] The Discovery Order determined that EEA has control over documents held by the Guernsey Manager based on EEA's contractual right to those documents, not based on EEA's access to those documents in the ordinary course. Accordingly, whether EEA has access to internal Guernsey Manager communications in the ordinary course of business is irrelevant.

**ORDERED** that Defendants Hiren Patel's and Vincent Piscaer's (the "Individual Defendants") Motion for Reconsideration (the "Individual Defendants' Motion," Dkt. No. 155) is **GRANTED** insofar as a more developed factual record is necessary to determine whether the Individual Defendants have control over the requested documents and whether sanctions for nonproduction are appropriate; and it is further

**ORDERED** that the Individual Defendants' Motion is **DENIED** as to the request for reconsideration on the question of the legal standard applicable to assessing an individual's control over company documents; and it is further

**ORDERED** that the magistrate judge is directed to conduct further proceedings, make factual findings, and submit a supplemental report and recommendation in accordance with this opinion; and it is further

**ORDERED** that the Motion so deemed by the Court as filed by EEA Life Settlements, Inc. (Dkt. No. 157) for Reconsideration of the Court's November 1, 2019 Decision and Order (Dkt. No. 149) is **DENIED**.

**SO ORDERED.**

Dated:     New York, New York
           11 February 2020

Victor Marrero
U.S.D.J.