USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/11/20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------X
COVENTRY CAPITAL US LLC,

                Plaintiff,

  - against -

EEA LIFE SETTLEMENTS INC., et al.,

                Defendants.
-------------------------------------X

17 Civ. 7417 (VM)

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

Plaintiff Coventry Capital US LLC ("Coventry") brought this diversity action against defendants EEA Life Settlements, Inc. ("EEA"), Vincent Piscaer ("Piscaer"), and Hiren Patel ("Patel," and together with Piscaer, "the Individual Defendants," and, collectively, "Defendants"), alleging that Defendants engaged in a pattern of fraudulent conduct aimed at undermining the negotiation of a contract to sell a portfolio of life insurance policies to Coventry. (See "Complaint," Dkt. No. 31.) The Complaint brings claims of (1) breach of contract (against EEA), (2) fraud/intentional misrepresentation (against all Defendants), and (3) aiding and abetting fraud/intentional misrepresentation (against the Individual Defendants).

On November 26, 2019, Magistrate Judge Sarah Cave granted Coventry's motion to compel EEA to produce documents held by its affiliates EEA Fund Management Limited ("EEA UK")

1

and EEA Life Settlements Fund PCC Limited (the "Fund") and ordered EEA to search for and produce responsive documents held by EEA UK and the Fund. (See "Judge Cave's Decision," Dkt. No. 162.) On December 1, 2019, EEA timely objected to Judge Cave's Decision pursuant to Federal Rule of Civil Procedure 72(a) ("Rule 72"). (See "Objection," Dkt. No. 174.) Now before the Court are the Objection, Coventry's opposition to EEA's Objection, and EEA's reply. (See "Opposition," Dkt. No. 183; "Reply," Dkt. No. 184.) For the reasons set forth below, the Court overrules EEA's Objection and affirms Judge Cave's Decision.

**I. BACKGROUND**

A. FACTUAL BACKGROUND

EEA is wholly owned by EEA Life Settlement Master Fund II Limited, which is wholly owned by EEA Life Settlements Holdings Limited ("EEA Holdings"). The Fund wholly owns EEA Holdings. Pursuant to an investment management agreement (the "Management Agreement") between the Fund and EEA Fund Management (Guernsey) Limited (the "Guernsey Manager"), the Guernsey Manager manages the Fund, EEA Holdings, EEA Life Settlement Master Fund II Limited, and EEA. Under a marketing agreement between the Guernsey Manager and EEA UK, EEA UK acts as marketing agent for the Fund. Anath Capital Group Limited ("Anath") wholly owns the Guernsey Manager and EEA

2

UK. Defendant Patel is a director and the Managing Director of EEA UK and a director of Anath. Defendant Piscaer is a director of the Guernsey Manager and Head of Alternative Investments for EEA UK.

B. THE DISCOVERY DISPUTE

The present dispute arises from requests for production that Coventry served on the Defendants seeking documents regarding EEA's business dealings with Coventry that are in the actual possession of EEA UK, the Guernsey Manager, and the Fund.

On February 8, 2018, Coventry moved to compel production; Magistrate Judge Pitman denied the motion by order dated March 29, 2018 based on Defendants' representations that they lacked access to the documents. (Dkt. No. 47.) However, Judge Pitman permitted Coventry to depose Christopher Daly ("Daly"), an EEA director, on questions of EEA's access to documents held by EEA UK, the Guernsey Manager, and the Fund. (See id.; Dkt. Nos. 138, 139.)

At a May 11, 2018 conference before Judge Pitman, Coventry asserted that the Individual Defendants had admitted that they had access to the documents in the ordinary course of business and therefore had the practical ability to produce the documents. (See Dkt. No. 62 at 5-6.) Judge Pitman ordered the Individual Defendants to produce the documents that were

3

"in their possession, custody, or control for any purpose." (Id. at 22:21-23.) When the Individual Defendants requested the documents, however, the Guernsey Manager and EEA UK expressed the view that production of the documents by the Individual Defendants would constitute misappropriation. (Dkt. No. 66-20.)

On June 12, 2018, Coventry moved to sanction the Individual Defendants and compel EEA to produce documents in the possession of the Guernsey Manager. (See Dkt. No. 66.) On January 24, 2019, Judge Pitman denied both motions. ("Judge Pitman's Decision," Dkt. No. 111.)

Coventry objected to Judge Pitman's Decision, and, on November 1, 2019, the Court sustained Coventry's objection and set aside that ruling. (See "Discovery Order," Dkt. No. 149.) In the Discovery Order, the Court held that Coventry is entitled to an adverse inference in the event the Individual Defendants do not produce certain documents held by non-parties EEA UK and the Guernsey Manager. (See id. at 11.) The Court reasoned that, in light of the Individual Defendants' status as directors, they had access to the documents in the ordinary course of business and, moreover, had influence over their employers' decisions as to whether to comply with the Court's production order. (Id. at 9-10.) Accordingly, the Court concluded that the Individual Defendants should not

4

benefit from EEA UK and the Guernsey Manager's "unilaterally imposed restriction" on their access to the documents "in response to Judge Pitman's order compelling production." (Id. at 10.) The Court also granted Coventry's motion to compel production by EEA of certain documents held by the Guernsey Manager. The Court reasoned that the Management Agreement gives EEA a contractual right to documents from the Guernsey Manager.

C.   JUDGE CAVE'S DECISION

While Coventry's objection to Judge Pitman's Decision was pending, Coventry sought to renew its February 8, 2018 motion to compel EEA to produce documents held by EEA UK and the Fund based on Daly's deposition testimony. (See Dkt. No. 145; Judge Cave's Decision at 4 & n.1.)

On November 26, 2019, Judge Cave granted Coventry's motion and ordered EEA to search for and produce documents held by EEA UK and the Fund. Judge Cave explained that Daly testified that he received documents and information from the Fund and EEA UK upon request or in the ordinary course of business. Based on this testimony, Judge Cave concluded that EEA could access documents held by the Fund and EEA UK in the ordinary course of business and therefore had control over such documents within the meaning of Rule 34 of the Federal Rules of Civil Procedure 34 ("Rule 34"). With regard to EEA's

claim that it lacked the practical ability to access the documents, Judge Cave reasoned that EEA was pointing to "the same type of 'unilaterally imposed restriction' that Judge Marrero has already concluded do[es] 'not supply a valid defense to production.'" (Judge Cave's Decision at 6 (quoting Discovery Order at 9-10).)

EEA timely objected. (See Objection.)

D.  THE PARTIES' ARGUMENTS

EEA argues that Judge Cave's Decision is clearly erroneous and contrary to law for three reasons. First, EEA contends that this Court's Discovery Order does not support Judge Cave's Decision. EEA argues that the present dispute is distinguishable from those addressed in the Discovery Order because it does not concern any contractual right to documents or any unilaterally imposed restrictions by an employer. Rather, according to EEA, the present dispute concerns whether EEA may be compelled to produce documents that EEA UK and the Fund have repeatedly denied it. Second, EEA argues that Judge Cave's Decision is contrary to law because the Daly deposition testimony does not, in fact, support a conclusion that EEA had control over documents held by EEA UK and the Fund. According to EEA, Daly's testimony that he received some documents and information from the Fund and EEA UK does not support a conclusion that EEA has access to all

6

responsive documents held by those entities. EEA claims that it has already produced all responsive, non-privileged documents it received from the Fund and EEA UK in the ordinary course. Third, EEA contends that Judge Cave's Decision overlooked that the Fund and EEA UK refuse to provide the documents to EEA, which, according to EEA, demonstrates that EEA lacks control over the documents. EEA argues that Judge Cave's Decision erroneously distinguished <u>In re Application of Potanina</u>, Nos. 14 Misc. 31, 2015 WL 4476612 (S.D.N.Y. June 30, 2015), in concluding that EEA has control over the documents.

In support of its Objection, EEA submitted a December 5, 2019 letter from counsel for the Guernsey Manager and EEA UK to counsel for EEA. (the "December 5, 2019 Letter," Dkt. No. 175-1.) In the letter, counsel for the Guernsey Manager and EEA UK deny that EEA has a right to require production from those entities.

In its Opposition, Coventry argues that EEA's objection to Judge Cave's Decision should be overruled for three reasons. First, Coventry argues that Judge Cave's Decision is fully consistent with the Discovery Order. Both decisions applied the rule that a party has the practical ability to obtain -- and therefore must produce -- documents to which it has access in the ordinary course of business.

Second, Coventry contends that Judge Cave's finding that EEA has access in the ordinary course to documents held by the Fund and EEA UK is not clearly erroneous. Coventry explains that this finding is supported by Daly's testimony that it is "standard" for EEA UK and the Fund to provide documents to EEA and that they have never denied EEA access to documents except in response to document requests in this litigation. (Opposition at 9-11 (citing "Daly Deposition," Dkt. No. 145-5, at 40:8-11, 44:12-23, 63:9-65:10, 65:14-66:8, 67:17-71:5, 117:12-15).) Coventry argues that Judge Cave's finding of access is also not clearly erroneous because the requested documents relate to the sale of a substantial amount of EEA's assets and because EEA worked closely with the Fund, EEA UK's director Patel, and EEA UK's officer Piscaer on the transaction.

Third, Coventry responds that Judge Cave did not overlook that EEA UK and the Fund have refused to provide documents to EEA but correctly held that such a unilaterally imposed restriction does not relieve EEA of its production obligations. Relatedly, Coventry argues that the Court must disregard the December 5, 2019 Letter because it is factual evidence that was not presented to the magistrate judge and thus not part of the record of this proceeding.

In its Reply, EEA maintains that Judge Cave's Decision "overextends" the Discovery Order. (Reply at 2-4.) EEA attempts to distinguish its position from that of the Individual Defendants, asserting that Daly is not an employee of the Fund or EEA UK and does not have access to their internal documents or databases in the ordinary course of business. Second, EEA contends that Daly's testimony indicates that he, in fact, does not customarily receive internal Fund and EEA UK documents in his work on behalf of EEA. Third, EEA argues that its relationship to the Fund and EEA UK does not support an inference that EEA has access to documents held by those entities.

With respect to EEA UK, EEA Inc. argues that the entities have distinct ownership, management, officers, directors, and information systems. While acknowledging that EEA is an indirect subsidiary of the Fund, EEA emphasizes that it has separate directors and information systems and can make decisions without the Fund. In response to Coventry's argument that the Court cannot consider the December 5, 2019 Letter, EEA states that the letter is merely support for its prior argument that EEA lacks the practical ability to obtain EEA UK's documents.

## II. LEGAL STANDARD

A. THE DISCOVERY DISPUTE

Rule 72 provides that when a party timely objects to a magistrate judge's order regarding a non-dispositive pretrial matter, the district judge "must . . . modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). "A finding is 'clearly erroneous' if the reviewing court is left with the definite and firm conviction that a mistake has been committed." R.F.M.A.S., Inc. v. So, 748 F. Supp. 2d 244, 248 (S.D.N.Y. 2010) (citation omitted). "Similarly, a finding is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." Id. "Therefore, pursuant to these standards, a magistrate judge's determinations on discovery matters are entitled to substantial deference." Id. The party seeking to overturn such determinations bears a "heavy burden." Id.

B. RULE 34

A party may serve upon any other party a request to produce documents "in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1). "The concept of 'control' has been construed broadly." In re Flag Telecom Holdings, Ltd. Secs. Litig., 236 F.R.D. 177, 180 (S.D.N.Y. 2006). Indeed, "'control' does not require that the party

10

have legal ownership or actual physical possession of the documents at issue; rather, documents are considered to be under a party's control when that party has the right, authority, or practical ability to obtain the documents from a non-party to the action." Bank of New York v. Meridien BIAO Bank Tanzania Ltd., 171 F.R.D. 135, 146-47 (S.D.N.Y. 1997). "One of the circumstances which warrants a finding of control is where a corporate entity has the ability in the ordinary course of business to obtain documents held by another corporate entity." SEC v. Credit Bancorp, Ltd., 194 F.R.D. 469, at *7 (S.D.N.Y. Oct. 28, 2009). The party seeking discovery has the burden of showing that the documents are within the other party's control. Linde v. Arab Bank PLC, 262 F.R.D. 136, 141 (E.D.N.Y. 2009).

### III. DISCUSSION

Judge Cave's Decision is fully consistent with this Court's Discovery Order. In assessing the Individual Defendants' control over their employers' documents, the Discovery Order relied on the rule that a party's "'ability in the ordinary course of business to obtain' . . . documents" from a non-party establishes the party's control over the documents. (Discovery Order at 9-10 (quoting In re Application of Bloomfield Inv. Res. Corp., 315 F.R.D. 165, 168 (S.D.N.Y. 2016)).) Judge Cave's application of this rule

11

to assess EEA's control over documents held by the Fund and EEA UK was not contrary to law. EEA emphasizes that it has no contractual right to obtain documents from those entities. A party that lacks a contractual right to obtain a third-party's documents, however, may nonetheless be found to have control over the third-party's documents based on a demonstrated ability to access those documents in the ordinary course of business. See Camden Iron and Metal, Inc. v. Marubeni Am. Corp., 138 F.R.D. 438, 441-42 (D.N.J. 1991) (listing "alternate grounds" supporting a finding of control).

The Court is also not persuaded that Judge Cave clearly erred in finding that EEA has access in the ordinary course of business to documents held by EEA UK and the Fund. (Objection at 9; Reply at 4-6.) EEA argues that Daly received only "discrete, targeted information" and that, according to Daly's deposition testimony, it was not "standard" for him to receive internal EEA UK correspondence about potential sales, negotiations, or transactions. (Reply at 5 (citing Dkt. 185-1, at 44:16-19; 63:19-64:6; 65:4-13, 117:18-21).) Nonetheless, Daly testified that EEA UK and the Fund never denied him access to documents except when refusing requests for documents to produce in this litigation. (See Daly Dep. at 68:5-69:3; 70:8-71:5.)

12

In addition, Daly testified that employees of EEA UK, the Guernsey Manager, and the Fund provided him documents from EEA UK and the Fund approximately four times per year; that he has "seen internal communications among personnel at . . . EEA UK[] and the [F]und regarding the transaction with Coventry"; and that it was standard for Piscaer, an EEA UK officer, to send Daly internal correspondence about potential sales of policies held by the Fund and about EEA tax issues. (See id. at 40:8-11, 44:12-15, 63:9-64:6, 65:4-66:10.)

Daly also testified that Piscaer never refused to provide documents requested by Mark Feaster of ViaSource, EEA's investment advisor. (See id. at 86:6-87:12.) EEA contends that Daly used some of the documents he received in his roles at ViaSource and the Fund, rather than in his role as an EEA director. (Reply at 5 (citing Dkt. 185-1, at 41:6-17; 46:16-20).) Regardless, Daly's testimony indicates a flow of information and documents from EEA UK and the Fund to EEA in the ordinary course of business and thus provides ample support for Judge Cave's finding. As Judge Cave pointed out, this finding is "consistent with EEA Inc.'s assertion in its initial disclosures that it had access to its affiliate's documents and its waiver of the issue of access in response

13

to Coventry's document requests." (Judge Cave's Decision at 4 (citing Dkt. No. 145-1, at 3-4).)[1]

Finally, Judge Cave did not commit clear error in holding that EEA has control over the documents despite the refusal of EEA UK and the Fund to provide them for purposes of production. As this Court explained in the Discovery Order, the Rule 34 analysis focuses on a party's "ability to obtain documents on demand," which is "not affected by the source's . . . unilaterally imposed restrictions on disclosure." Resolution Tr. Corp. v. Deloitte & Touche, 145 F.R.D. 108, 110 (D. Colo. 1992); accord Societe Internationale Pour Participations Industrielles Et Commerciales, S.A. v. Rogers, 357 U.S. 197, 204-05 (1958) (holding that a foreign company had control of and could be ordered to produce records held by a bank although Swiss penal law and the Swiss Government's constructive seizure of the records limited the company's ability to comply). Accordingly, the Discovery Order held that the Individual Defendants had control over their employers' documents notwithstanding that their employers revoked their access. (Discovery Order at 10.)

---

[1] Because the Court concludes that Judge Cave's finding that EEA had access to documents in the ordinary course of business is not clearly erroneous, the Court need not decide whether EEA has control according to the alternate theories advanced by Coventry.

EEA insists that its situation is "entirely different" from that of the Individual Defendants but identifies no relevant distinction. In light of Daly's testimony that this litigation is the only occasion in which EEA UK and the Fund have denied EEA access to documents, the Court is persuaded that this case is more analogous to Resolution Trust, 145 F.R.D. 108, than In re Application of Potanina, 2015 WL 4476612. In concluding that an officer lacked the practical ability to obtain documents in In re Application of Potanina, the court credited the individual's testimony that his access and authority at the company were limited and that he never previously exercised broad authority to request company documents. See id. at n.4.[2] Thus, Judge Cave did not err in distinguishing In re Application of Potanina based on EEA's demonstrated ability to access documents held by EEA UK and the Fund. The other case EEA cites, Shcherbakovskiy v. Da Capo Al Fine, Ltd., 490 F.3d 130 (2d Cir. 2007), also did not involve a party with a demonstrated ability to access documents held by a non-party.[3]

---

[2] In addition, the court's holding reflected the unique considerations applicable to discovery under 28 U.S.C. § 1782. See In re Application of Potanina, 2015 WL 4476612, at *3.

[3] Because the Court concludes that refusals by EEA UK and the Fund to provide EEA with the requested documents do not relieve EEA of its production obligations, the Court need not consider the December 5, 2019 Letter, which was not presented to Magistrate Judge Cave.

15

## IV. ORDER

Accordingly, for the reasons stated above, it is hereby

**ORDERED** that the objection filed by Defendant EEA Life Settlements, Inc. (Dkt. No. 174) to the Opinion and Order of Magistrate Judge Sarah Cave dated November 26, 2019 (Dkt. No. 162) is **OVERRULED** and that Opinion and Order is **AFFIRMED**.

**SO ORDERED.**

Dated:  New York, New York
        10 February 2020

_____
VICTOR MARRERO
U.S.D.J.