UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

COVENTRY CAPITAL US LLC,

                              Plaintiff,

          -v-

EEA LIFE SETTLEMENTS INC., et al,

                              Defendants.

CIVIL ACTION NO.: 17 Civ. 7417 (VM) (SLC)

**ORDER**

**SARAH L. CAVE**, United States Magistrate Judge.

Before the Court are filings by Plaintiff Coventry Capital US LLC ("Coventry") and Defendants EEA Life Settlements Inc. ("EEA Inc."), Vincent Piscaer ("Piscaer") and Hiren Patel ("Patel") (Piscaer and Patel together, "Individual Defendants," along with EEA Inc., "Defendants") concerning two broad categories of discovery disputes (the "Disputes"). (See ECF No. 241). The first dispute involves whether approximately 56,000 documents that were delivered to EEA Life Settlements Fund PCC Limited (the "Fund") pertain instead to EEA Fund Management (Guernsey) Limited ("Guernsey Manager") (the "Guernsey Manager Documents") and should accordingly be limited to the period January 1, 2017 forward and reviewed by Guernsey Manager manually, rather than including them in an in-process technology assisted review ("TAR"). (See ECF Nos. 246, 249, 258). The second dispute involves: (i) whether Phase II discovery should involve seven additional custodians[1] and the application of search terms to Mimecast data; (ii) Defendants' privilege, redaction, and confidentiality designations (including Attorneys' Eyes Only ("AEO")

---

[1] The proposed custodians are Barry John and Andrew Harrop of EEA UK; William Simpson and Mark Clubb, both directors at EEA Guernsey; and Fund directors Mark Colton, David Jeffreys, and Steve Burnett. (ECF No. 244 at 2–3). Mr. Harrop was Group General Counsel at the times pertinent to this litigation. (See ECF No. 244-11).

designations) made on their productions to-date; and (iii) supplemental responses to Coventry's interrogatories to EEA Inc. (the "Interrogatories").   (See ECF Nos. 244, 252, 259).

For the reasons set forth below, the Court ORDERS that:

(1) The Guernsey Manager Documents shall be excluded from the TAR review and shall be manually reviewed and produced by **Friday, January 8, 2021**.

(2) Phase II discovery shall include:  (a) a search of Barry John's ESI but not the other six custodians; and (b) application of search terms to the Mimecast data, production of a hit report, and a meet-and-confer among the parties as to whether any responsive data shall be produced and if so, on what timeline.

(3) Coventry's motion to expand document discovery to include the period prior to January 1, 2017 is DENIED.

(4) By **Monday, December 21, 2020**, EEA Inc. shall serve on Coventry the names of the attorneys, in-house and outside counsel, who were involved in the communications recorded on the categorical privilege log, and identify which logged communications were sent by those attorneys.  The parties must then meet-and-confer regarding particular communications, if Coventry continues to have questions regarding the privilege.  If the parties remain unable to resolve this dispute, they may propose an in camera review by the Court of a sample of no more than 20 privileged documents.

(5) EEA Inc. is directed to remove redactions predicated on irrelevance, following a meet-and-confer with Coventry regarding the prioritization of and schedule for their reproduction.

(6) The parties shall meet-and-confer as to the AEO designations, and if by **Friday, January 22, 2021** any disputes remain, the parties shall jointly file a letter setting forth their respective positions.

(7) Coventry's request to compel supplemental responses to the Interrogatories is DENIED.

## I.   BACKGROUND

### A.   Factual Background

The following factual summary is largely adopted from the November 1, 2019 Decision & Order of the Honorable Victor A. Marrero ("Nov. 1 Decision").  (ECF No. 149).  Familiarity with

the background of this matter is presumed and only those facts relevant to the resolution of this dispute are included.

Coventry brought this action against EEA Inc., Piscaer, and Patel alleging that Defendants engaged in a pattern of fraudulent conduct aimed at undermining the negotiation of a contract to sell a portfolio of life insurance policies to Coventry.  (ECF No. 149 at 1).  As alleged in the complaint, on April 27, 2017, "EEA [Inc.] entered into an agreement with Coventry . . . that set forth the principal terms of a purchase of the policies and the parties' intention to reach a Definite Agreement within a framework set forth in the Contract."  (ECF No. 31 ¶ 4).  Coventry alleged that "[o]ver the ensuing months of negotiations, Defendants undermined all efforts to reach a Definitive Agreement. . ."  (Id. ¶ 5).

Coventry's claims, which survived a motion to dismiss in early 2018 (ECF No. 43), include: (1) breach of contract (against EEA Inc. only); (2) fraud/intentional misrepresentation; and (3) aiding and abetting fraud/intentional misrepresentation (against the Individual Defendants only).  (ECF No. 149 at 1).

"EEA [Inc.] is a Delaware corporation wholly owned by EEA Life Settlement Master Fund II Limited, which is itself wholly owned by EEA Life Settlements Holdings Limited ('EEA Holdings')." (ECF No. 149 at 2).  The Fund wholly-owns EEA Holdings.  (Id.)  Pursuant to an investment management agreement (the "Management Agreement") between the Fund and Guernsey Manager, Guernsey Manager "manages the Fund, EEA Holdings, EEA Life Settlement Master Fund II Limited, and EEA [Inc.]."  (Id. at 2–3).  "Pursuant to a marketing agreement between the Guernsey Manager and EEA Fund Management Limited ("EEA UK"), EEA UK acts as marketing agent for the Fund."  (Id. at 3).  Guernsey Manager and EEA UK are wholly owned by Anath Capital

Group Limited ("Anath").  (Id. at 3).  Defendant Patel is a director of EEA UK, the Managing Director of EEA UK, and a director of Anath, while Defendant Piscaer is a director of the Guernsey Manager and Head of Alternative Investments for EEA UK.  (Id.)

**B.  Procedural Background**

On September 21, 2018, Coventry requested that Judge Marrero hold a pre-motion conference regarding its contemplated motion for a preliminary injunction against EEA Inc. that would preclude it from selling, transferring or otherwise pledging the life insurance portfolio at issue in this action.  (ECF No. 84).  Coventry asserted that a preliminary injunction was "urgently needed, because any such sale would vitiate the equitable relief that Coventry seeks and render EEA [Inc.] judgment proof by dissipating its only assets."  (Id. at 1).  On December 17, 2018, Judge Marrero issued a Decision and Order denying the motion for a preliminary injunction ("December 17 Order").  (ECF No. 99).  In pertinent part, Judge Marrero held that "Coventry has failed to make a 'clear showing' that EEA [Inc.] would be judgment proof after trial."  (Id. at 5) (citing Grand River Enter. Six Nations, Ltd. v. Pryor, 481 F.3d 60, 66 (2d Cir. 2007)).

On December 28, 2018, Coventry moved for reconsideration of the December 17 Order (ECF No. 100) and on January 29, 2019, Judge Marrero denied the motion for reconsideration ("January 29 Order").  (ECF No. 116).  In the January 29 Order, Judge Marrero emphasized that the December 17 Order was "premised on Coventry's failure to clearly show a likelihood based on the facts on the record – rather than a speculative possibility or conclusory statement – that, absent an order enjoining any sale of the Portfolio, EEA [Inc.] would be unable to satisfy a monetary damages award were it to lose at trial."  (ECF No. 116 at 7).  While reiterating that Coventry failed to make a convincing showing of the threat to render EEA Inc. judgment proof,

Judge Marrero propounded certain "threshold factual questions" to which "convincing answers could serve as a basis for a renewed motion . . . for injunctive relief."  (Id. at 7–8).  Among these questions were:

1. Is it certain there are no legal restrictions on [EEA Inc.'s] ability to dispose of all of its assets and thus render itself judgment proof?

2. Has discovery produced evidence establishing that, upon a sale of the portfolio, EEA [Inc.] would have no control over the disposition of proceeds, other than being legally obligated to turn them over to its parent company?

3. Is there evidence that the parent company could not be bound to satisfy a judgment rendered against EEA [Inc.], by means, for instance, of corporate veil-piercing principles?

(Id.)

In 2019, a discovery dispute arose concerning Coventry's requests for production to Defendants seeking documents "regarding EEA [Inc.]'s business dealings with Coventry that are in the actual possession of non-parties, particularly the Guernsey Manager and EEA UK."  (ECF No. 149 at 3).  Magistrate Judge Henry B. Pitman denied Coventry's motion (ECF No. 111) but after briefing on Coventry's objections, Judge Marrero set aside Magistrate Judge Pitman's order, holding that Coventry would be entitled to an adverse inference if the Individual Defendants failed to produce the requested documents from Guernsey Manager and EEA UK, and ordered EEA Inc. to produce documents from Guernsey Manager.  (ECF No. 149 at 10–14).  Judge Marrero rejected Defendants' argument that the Individual Defendants lacked access to the requested documents on the grounds that Guernsey Manager and EEA UK denied their requests for documents, and determined instead that the Individual Defendants' status as directors "establishe[d] that they had 'the ability in the ordinary course of business to obtain' the documents."  (Id. at 9) (citing In re Application of Bloomfield Inv. Res. Corp., 315 F.R.D. 165, 168

(S.D.N.Y. 2016).   Moreover, Judge Marrero determined that the terms of the Management Agreement "evince[d] a clear contractual obligation on the part of the Guernsey Manager sufficient to place the documents in [EEA Inc.'s] 'control.'"  (Id. at 12–13) (quoting Mazzei v. Money Store, No. 01 Civ. 5694 (JGK) (RLE), 2014 WL 3610894, at *3 (S.D.N.Y. July 21, 2014).[2] Notwithstanding Guernsey Manager's intent not to comply with the contractual obligation, "the case law indicates that contractual obligation is dispositive as to control."  (Id. at 13) (internal citations omitted).

On November 26, 2019, the undersigned granted Coventry's motion to compel EEA Inc. to produce documents held by EEA UK and the Fund.  (ECF No. 162).  The Court determined that because EEA Inc. had the ability to "access [] documents [from the Fund and EEA UK] when the need arises in the ordinary course," it had "control" over them.  (Id. at 6) (citing DeSmeth v. Samsung Am. Inc., No. 92 Civ. 3710 (LBS) (RLE), 1998 WL 74297, at *10 (S.D.N.Y. Feb. 20, 1998). EEA Inc. objected pursuant to Federal Rule of Civil Procedure 72(a) (see ECF No. 174) and on February 11, 2020, Judge Marrero overruled the objection and affirmed its prior order.  (ECF No. 189).

The Individual Defendants moved for reconsideration of the Nov. 1 Decision, or, in the alternative, for certification for interlocutory appeal under 28 U.S.C. § 1292(B) (ECF Nos. 155–56), arguing that the Court overlooked facts relevant to their control over documents held by Guernsey Manager and EEA UK.  (See ECF No. 188 at 15).  EEA Inc. also moved for reconsideration

---

[2] These terms include that the Guernsey Manager "shall . . . at all times give promptly to the Directors . . . all such information and explanations as the Directors . . . may require with respect to a Group Entity's Investment Assets[,]" and "shall . . . observe and have regard to . . . any directions provided by the Directors."  (Id.) (internal citations omitted).

or alternatively for clarification of the Nov. 1 Decision.  (ECF No. 157).  On February 11, 2020, Judge Marrero granted the Individual Defendants' motion, ruling that a more developed factual record was needed to determine whether they had control over the requested documents and whether sanctions for nonproduction were appropriate.[3]  (ECF No. 188 at 21–22).  Conversely, Judge Marrero denied EEA Inc.'s reconsideration motion, and maintained that "[the Nov. 1 Decision] requires EEA [Inc.] to request from the Guernsey Manager all responsive documents held by the Guernsey Manager."  (Id. at 21).

On April 3, 2020, after a conference and review of the parties' discovery status report (ECF No. 202), the undersigned ruled that Phase I of discovery would not include custodians Barry John, Mark Clubb, Andrew Harrop, and William Simpson, and permitted Plaintiff to renew its request for discovery from these custodians at a later time (the "Phase I Order").  (ECF No. 203).[4]

Phase I discovery continued in the following months, and the parties agree that EEA Inc. has produced at least 8,000 documents thus far.  (See ECF Nos. 244 at 5; 252 at 2).  EEA Inc. adds that it has reviewed 60,000 documents to date and argues that the "low number of responsive documents is a direct consequence of Coventry's overbroad terms."  (ECF No. 252 at 2 n. 3).

In approximately June 2020, the parties began discussing and negotiating the review of documents using "predictive coding" under TAR review.  (See ECF Nos. 209; 216 at 7).  As described by EEA Inc.'s counsel at the June 11, 2020 conference, the TAR process for the review of ESI entails a combination of document review by predictive coding and manual review,

---

[3] Reconsideration as to the Individual Defendants was granted principally because of their argument that local law required their recusal from their employers' decisions concerning their access to documents. (ECF No. 188 at 16).

[4] Phase One discovery included the email accounts of Piscaer, Martyn Roussell (of Guernsey Manager), Patel, and Simon Shaw (of EEA UK and a director of the Fund).  (ECF No. 202).

wherein a seed set of documents is predictively coded as presumptively responsive and then manually reviewed. (ECF No. 214 at 7:23–8:12). As described by counsel, TAR is a "fluid process" that involves monitoring the responsiveness scores over time and adjusting the model. (Id. at 8:23–9:14). On August 6, 2020, EEA Inc. provided the Court with a "TAR Review Protocol" describing the technical aspects of the process. (See ECF No. 226 at 2–3).

The TAR review and document production process has been protracted and contentious. Although the Court ordered the parties to confer concerning the predictive coding process as early as June 11, 2020 (see ECF Nos. 213–14), Coventry reported nearly a month later that EEA Inc. had not yet provided any details concerning the protocol. (ECF No. 216 at 7). In a joint filing dated August 6, 2020, Coventry reported that "**EEA Inc. still has not produced a single document.**" (ECF No. 226 at 5). On November 20, 2020, in briefing concerning the Disputes, Coventry lamented that EEA Inc. still "has yet to provide usable TAR metrics to Coventry" following modifications to the TAR process including implementation of an additional seed set of 3,200 documents to adjust the TAR metrics. (ECF No. 249 at 3).

During Phase I Discovery, the parties also raised the Mimecast dispute. (See ECF No. 209). By way of background, the Fund's administrator, Saffery Champness Fund Services Limited ("Saffery"), maintained documents related to the Fund that were sent to an outside vendor for processing. (Id. at 2). Saffery catalogued emails relating to the Fund by designating them with a specific "M" number and then filing them on the "F" drive. (Id.) Separate from the "F" drive, "all emails, for every client of Saffery, are archived in a software program called 'Mimecast[]' . . . [which] has no folder structure and includes every client of Saffery, which would be unrelated to the Fund." (Id.) Coventry seeks a search of the Mimecast data because of the risk that Saffery

employees may have failed to manually code relevant emails, resulting in their not being captured in the "F" drive and therefore not being produced.  (Id. at 6).

Following the November 6, 2020 conference concerning the Disputes, the Court imposed a briefing schedule.  (See ECF No. 241).  The Disputes are now ripe.  (See ECF Nos. 244–46, 249–52, 258–59).

## II.   DISCUSSION

### A.   Legal Standards

The Federal Rules of Civil Procedure establishes the scope of discovery as the following:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to the party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).  "Rule 26 gives a district court 'broad discretion. . . to impose limitations or conditions on discovery . . . which extends to granting or denying motions to compel or for protective orders on just terms."  Coty v. Cosmopolitan Cosmetics, Inc., No. 18 Civ. 11145 (LTS) (SLC), 2020 WL 3317204, at *1 (S.D.N.Y. June 18, 2020) (quoting Capstone Logistics Holdings, Inc. v. Navarrete, No. 17 Civ. 4819 (GBD) (BCM), 2018 WL 6786237, at *8 (S.D.N.Y. Dec. 13, 2018)).

"A party may serve on any other party a request [to produce documents] within the scope of Rule 26(b)" that are in the other party's possession, custody, or control.  Fed. R. Civ. P. 34(a)(1). The responding party then must produce the requested documents "or state with specificity the grounds for objecting to the request, including the reasons."  Fed. R. Civ. P. 34(b)(2)(B).  If a party fails to make a disclosure required by Rule 26(a), or makes an incomplete disclosure, any other party may move to compel disclosure.  Fed. R. Civ. P. 37(a).  "Motions to compel, pursuant to

Rule 37, are left to the sound discretion of the court." See Christine Asia Co., Ltd. v. Alibaba Grp. Holding Ltd., 327 F.R.D. 52, 54 (S.D.N.Y. 2018) (internal citations omitted). "A district court has broad latitude to determine the scope of discovery and to manage the discovery process." EM Ltd. v. Republic of Arg., 695 F.3d 201, 207 (2d Cir. 2012).

The party seeking the production bears the burden of establishing control. See Sicav v. Wang, No. 12 Civ. 6682 (PAE), 2014 WL 2624753, at *4 (S.D.N.Y. June 12, 2014); DeSmeth, 1998 WL 74297, at *9. "Control," for purposes of Rule 34(a), is not limited to situations where managerial power exists or where the facts are sufficient to pierce the corporate veil; control can also be established where "there is access to documents when the need arises in the ordinary course," "where the subsidiary was the marketer and servicer of the parent's product in the United States," or where there is "close coordination" between the US-based party and the foreign corporation. DeSmeth, 1998 WL 74297, at *10 (internal citations omitted).

### B. Guernsey Manager Documents

EEA Inc. seeks to exclude from the TAR Review, and to review manually, the Guernsey Manager Documents, and to limit production to the period from January 1, 2017 forward. (See ECF No. 246). EEA Inc. expects that the manual review (limited to documents from 2017 forward) can be completed within three weeks. (ECF No. 246 at 3).

EEA Inc. argues that the Fund and Guernsey Manager are distinct entities, separately owned and controlled, and the Fund should not review the Guernsey Manager Documents, which were mistakenly filed with Fund documents. (ECF Nos. 246 at 1–2; 258 at 1). With respect to the TAR Review, EEA Inc. represents that it is "now able to provide accurate recall and precision

metrics[,]" and that to add the Guernsey Manager Documents to the TAR Review now would skew the recall and precision metrics and cause delay.  (ECF No. 258 at 3).

By contrast, Coventry seeks to include the Guernsey Manager Documents in the TAR Review because they are in EEA Inc.'s possession within the meaning of Fed. R. Civ. P. 34.  (ECF No. 249).  Coventry recounts the delays in discovery in this action and suggests that manual review of the Guernsey Manager Documents would cause further delay.  (ECF No. 249).

The Court declines to order that the Guernsey Manager Documents be inserted into the TAR Review at this late stage of Phase I of discovery.  Discovery in this heavily litigated action has been ongoing since 2017 (see ECF No. 36), and, as Coventry recognizes, the TAR Review has been protracted.  (See No. 249 at 3).  The Court's ruling is in accordance with Judge Marrero's order that EEA Inc. is obliged to produce responsive documents held by the Guernsey Manager.  (See ECF No. 188).  Moreover, while "the case law has developed to the point that it is now black letter law that where the producing party wants to utilize TAR for document review, courts will permit it[,]" "[i]n contrast, where the requesting party has sought to force the producing party to use TAR, the courts have refused."  Rio Tinto PLC v. Vale S.A., 306 F.R.D. 125, 127 n.1 (S.D.N.Y. 2015).

Accordingly, the Court orders that EEA Inc. shall complete its manual review and production of the Guernsey Manager Documents by **Friday, January 8, 2021**.

### C.   Scope of Phase II Discovery

Coventry proposes that Phase II discovery begin with three categories of productions: (i) documents from the remaining seven custodians who were not included in Phase I discovery ("Phase II Custodians") per the Court's Phase I Order (ECF No. 203); (ii) search of Mimecast data;

and (iii) documents from EEA UK and EEA Guernsey predating January 1, 2017.  (ECF No. 244 at 3–5).

EEA Inc. opposes Phase II discovery altogether as disproportionate and overly burdensome, especially given the volume of Phase I discovery, which included work emails and network drive documents from the Individual Defendants as well as Martyn Roussel and Simon Shaw, who were directors of Guernsey Manager and EEA UK, along with all of the Fund and Manager documents located at Saffery.  (ECF No. 252 at 2–3).  Accordingly, "virtually all material communications will have touched the mailbox of at least one of the Phase I Custodians and/or will have been harvested by Saffery."  (Id. at 3).  Finally, and separate and apart from Phase II, EEA Inc. emphasizes that it is currently in the process of reviewing an additional 80,000 documents in the TAR process.  (Id. at 2).

### 1.  Phase II Custodians

The party seeking searches of additional custodians "'must demonstrate that the additional requested custodians would provide <u>unique</u> relevant information' by 'providing . . . evidence that there are unique responsive documents being missed in the current search scheme that would justify the inclusion of additional custodians.'"  <u>Blackrock Allocation Target Shares: Series S Portfolio v. Bank of N.Y. Mellon</u>, No. 14 Civ. 9372 (HBP), 2018 WL 2215510, at *9 (S.D.N.Y. May 15, 2018) (denying additional custodian whose documents would "fit squarely within the categories of documents apparently possessed by the Existing Custodians. . .") (quoting <u>Fort Worth Emps. Ret. Fund v. J.P. Morgan Chase & Co.</u>, 279 F.R.D. 99, 107 (S.D.N.Y. 2013); <u>see</u> <u>Assured Guar. Mun. Corp. v. UBS Real Estate Secs. Inc.</u>, No. 12 Civ. 1579 (HB) (JCF), 2013 WL 1195545, at *4–5 (S.D.N.Y. Mar. 25, 2013) (denying certain additional custodians where the party seeking

discovery "fails to demonstrate that the remaining proposed custodians possess relevant documents that are not also within the custody of the three named custodians").

Coventry argues that the Phase II Custodians "all played key roles in directing, discussing, and executing Defendants' negotiations with Coventry[,]" and must be searched because they were listed on EEA's initial disclosures.  (ECF No. 244 at 3).

The Court agrees that Barry John should be included as a Phase II Custodian.  Exhibits Five and Six to Coventry's Letter-Motion to Compel (ECF No. 244) show that Mr. John took an active role in internal discussions assessing the contract between EEA Inc. and Coventry, including providing his feedback concerning the "PR assessment of the risk of the sale / non-sale scenario" and information that would be conveyed to the Fund's board of directors.  (ECF Nos. 244-6; 244-5).  Conversely, Coventry has not met its burden to show that a search of the remaining six Phase II Custodians' ESI would provide unique, relevant and noncumulative evidence.  See Blackrock, 2018 WL 2215510, at *9; Assured, 2013 WL 1195545, at *4–5.  After reviewing the exhibits to the parties' filings, the Court determines that the remaining Phase II custodians either played a less active role, or, in the case of Mr. Harrop, as General Counsel, were copied on emails that appear to have largely been captured and produced in the Phase I productions.  (See, e.g., ECF No. 244-11).

As such, it would be disproportionate to permit the remaining Phase II Custodians in light of the discovery already produced by the Phase I custodians.  See Assured, 2013 WL 1195545 at *3.  Accordingly, the Court orders that Barry John be included as a Phase II Custodian, and Andrew Harrop, William Simpson, Mark Clubb, Mark Colton, David Jeffreys, and Steve Burnett be excluded.

### 2.  **Mimecast Data**

Coventry asks that EEA Inc. be directed to apply the parties' previously-agreed search terms to the Mimecast data to determine whether any ESI was not captured in Phase I Discovery. (ECF Nos. 244 at 4, 259 at 3).  EEA Inc. describes the Mimecast data as a "data dump" for Saffery that contains documents for a "large number of Saffery clients," and argues that Coventry has provided no reason to believe that it contains relevant evidence because the Saffery representatives involved in a meet-and-confer call with the parties "said they were not aware of any Saffery personnel that did not follow th[e] procedure [for maintaining documents in their client's respective folders on the "F" drive]."  (ECF No. 252 at 4).  EEA Inc. also opposes a Mimecast search because of data privacy and proportionality concerns, because Mimecast "has no folder structure and includes every client of Saffery . . . [resulting in] various difficulties with searching 'Mimecast[.]'"  (ECF Nos. 252 at 4; 209 at 2).

The Court finds that EEA Inc.'s data privacy and proportionality concerns are not ripe until the search terms have been applied to the Mimecast data and a hit report has been generated. At that point, the parties will know if any potentially responsive documents exist in the Mimecast data, and if so, how to proceed with production most efficiently.  Accordingly, the Court orders that the parties' previously-agreed search terms be applied to the Mimecast data, a hit report be generated, and the parties thereafter meet-and-confer about the process for review and production of responsive documents.

### 3.  **Pre-2017 Documents**

Coventry alleges that the parties entered their agreement on April 27, 2017.  (ECF No. 31 ¶ 4).  Throughout Phase I discovery, the parties have employed January 1, 2017 as the starting

date for document searches, with the intention of capturing the parties' interactions and negotiations in the months leading up to their agreement.  (See, e.g., ECF Nos. 209 at 7; 246 at 2). Coventry now argues that documents from EEA UK and EEA Guernsey from 2014–2016 must be "highly relevant to Coventry's potential renewed request for a preliminary injunction[,]" and concern "regulatory and investor issues, financial distress, fraud in life insurance policies, and valuation."  (ECF No. 244 at 4; see also ECF No. 249 at 2).

EEA Inc. opposes this request as a burdensome "fishing expedition" that will not yield documents relevant to the claims and defenses in this action.  (ECF No. 246 at 2–3).  To the contrary, EEA Inc. suggests that these documents relate to dealings with non-parties such as investors and regulators.  (Id. at 3).

The Court finds that the burden and expense of searching for and producing documents for a period of more than three years preceding the agreement outweighs the speculative relevance of these documents.  See Alaska Elec. Pension Fund v. Bank of Am. Co., No. 14 Civ. 7126 (JMF), 2016 WL 6779901 at *2–4 (S.D.N.Y. Nov. 16, 2016) (denying motion to compel on relevance, proportionality and overbreadth grounds given the large volume of documents already produced and the failure of moving party to point to "any specific information that is relevant to their claims and would be found solely in the unproduced documents.").  Coventry has not pointed to any communication, meeting, or other type of interaction between the parties in this case on which to conclude that a search for pre-January 1, 2017 documents should be undertaken at this time.  Accordingly, the Court denies Coventry's request to expand the time period for Defendants' searches and productions prior to January 1, 2017.

**D.  Privilege, Redaction and Confidentiality Designations**

  **1.  Privilege**

The parties' Stipulation and Discovery Order ("Parties' Discovery Stipulation") (ECF No. 39) provided for the exchange of categorical privilege logs and established a particular procedure for resolving privilege disputes:

> If any Party disagrees that a privilege log provides sufficient information to evaluate or challenge the claim of privilege or protection, that Party may request further information, and the Party claiming the privilege or protection must provide the information required by Rule 26(b)(5) or other applicable law.

(ECF No. 39 ¶ 29).  The parties' categorical privilege logs include five fields of information: the document's bates numbers, date range, description, authors and addresses and the category of privilege asserted.  (See ECF No. 252-1).

Notwithstanding the Parties' Discovery Stipulation, Coventry now asks that EEA Inc. be required "to provide a line-by-line privilege log for all documents that it has withheld based on privilege."  (ECF No. 244 at 5).  Coventry argues that EEA Inc.'s categorical log "is so general that it is impossible to evaluate [EEA Inc.'s] privilege claims[,]" (ECF No. 244 at 5), and that it "has no way of knowing who was copied on the emails, who authored or received the word and PDF files, whether a lawyer was the principal communicator or merely one of the numerous recipients of the document, etc."  (ECF No. 259 at 4).

EEA Inc. points out that Coventry's categorical privilege log appears in the same format as EEA Inc.'s, and states that it is "happy to meet and confer on specific information requests if made by Coventry."  (ECF No. 252 at 4).

The Court finds that Coventry's demand that EEA Inc. produce an entirely new, itemized privilege log would be burdensome, particularly in light of the parties' negotiated stipulation to provide categorical logs.  The parties, however, have made minimal effort to meet-and-confer to resolve this issue on their own.  In the interest of narrowing the scope of Coventry's complaints about EEA Inc.'s categorical privilege log, the Court orders that, by **Monday, December 21, 2020**, EEA Inc. serve on Coventry the names of the attorneys, in-house and outside counsel, who were involved in any of the communications recorded on the categorical privilege log, and identify which logged communications were sent by those attorneys.  The parties must then meet-and-confer regarding particular communications about which Coventry continues to have questions regarding the privilege.  If the parties remain unable to resolve their dispute concerning documents EEA Inc. has withheld for privilege, they may make a proposal by which the Court would conduct an <u>in camera</u> review of a sample of no more than 20 privileged documents.

### 2. <u>Relevance redactions</u>

Coventry asks the Court to direct EEA Inc. to remove all relevance redactions, arguing that the redactions are categorically impermissible, and any confidentiality concerns are allayed by the fact that the documents can be designated as confidential under the parties' Protective Order.  (<u>See</u> ECF Nos. 45, 244 at 5, 259 at 4).

EEA Inc. counters that it has redacted "largely non-responsive information contained in board meeting minutes of non-party entitles that are highly sensitive of nature," and that the redactions are permissible given the documents' confidential and highly sensitive nature.  (ECF No. 252 at 4–5).

"The weight of authority in this Circuit goes against allowing a party to redact information from admittedly responsive and relevant documents 'based on that party's unilateral determinations of relevancy.'" Christine, 327 F.R.D. at 54 (quoting Cyris Jewels v. Casner, No. 12-CV-1895 (KAM) (SLT), 2016 WL 2962203, at *4 (E.D.N.Y. May 20, 2016)).  Redactions are normally impermissible unless based on a legal privilege. John Wiley & Sons, Inc. v. Book Dog Books, LLC, 298 F.R.D. 184, 186 (S.D.N.Y. 2014) (citing In re State Street Bank and Trust Co. Fixed Income Funds Inv. Litig., No. 08 Civ. 333 (DFE), 2009 WL 1026013, at *1 (S.D.N.Y. Apr. 8, 2009)). Moreover, redactions are particularly impermissible where a confidentiality stipulation and order is in place.  Christine, 327 F.R.D. at 54 (citing Durling v. Papa John's Int'l, Inc., No. 16 Civ. 3592 (CS) (JCM), 2018 WL 557915, at *9 (S.D.N.Y. Jan. 24, 2018)).

The Parties' Discovery Stipulation provides for confidentiality protections in this action, and EEA Inc. cites no persuasive grounds to depart from the general rule prohibiting relevance redactions.  As Coventry notes, to the extent EEA Inc. is concerned about the production of confidential or highly sensitive documents, they may be designated as confidential.  Accordingly, the Court orders EEA Inc. to remove redactions predicated on irrelevance, following a meet-and-confer with Coventry regarding the prioritization of and schedule for their reproduction.

### 3.  **Confidentiality**

Coventry seeks an order directing EEA Inc. to remove potentially "hundreds" of AEO designations "that do not relate to a specific trade secret and, if EEA Inc. maintains any AEO designations, to explain the basis for the designations so that Coventry may challenge them if

appropriate." (ECF No. 244 at 5–6).  EEA Inc. counters that AEO designations are proper as "trade secret information" under the parties' Amended Protective Order.[5]  (ECF No. 252 at 5).

The Court declines to make a blanket ruling — in the abstract — as to the "hundreds" of AEO designations where the parties have not meaningfully met and conferred regarding Coventry's objections.  (ECF No. 244 at 5).  See Coty, 2020 WL 3317204, at *7 (directing parties to meet-and-confer in dispute concerning purportedly "highly confidential-attorneys' eyes only" designation).  Accordingly, the Court directs the parties to meet-and-confer as to AEO designations, and if, by **Friday, January 22, 2021** any disputes remain, the parties shall jointly file a letter setting forth their respective positions.

### E.  Coventry's Interrogatories to EEA Inc.

Finally, Coventry seeks supplemental responses to the Interrogatories requesting the following two categories of information:  "(1) identification of the amounts, dates, recipients, and consideration for any transfers of the proceeds from the sixty-three policy maturities that have occurred since May 2017, and (2) a policy-by-policy quantification of the current Net Asset Value ("NAV") of the policies in this Portfolio."  (ECF No. 244 at 6).  Coventry asserts that it needs this information to assess whether EEA Inc. may attempt to render itself judgment proof while this case is pending.  (Id. at 6).

In opposition, EEA Inc. argues that it has already provided ample data concerning its current financial status, including the current aggregate NAV of the Fund, the net death benefits

---

[5] The Amended Protective Order, effective July 21, 2020, permits a producing party to designate as "Highly Confidential — Attorneys' Eyes Only" information that "includes trade secret information, including (i) proprietary pricing models, valuation methodologies and any outputs therefrom; or (ii) mortality tables, assumptions, or experiences."  (ECF No. 225 at ¶ 3).

for each policy held by EEA Inc. and the amount of available cash as of September 2020.  (ECF No. 252 at 6).

The Court finds that the Interrogatories seek information that is extraneous to and cumulative of the information that EEA Inc. has already provided.  While Coventry argues that these requests "tie directly to Judge Marrero's roadmap[,]" (ECF No. 244 at 6), the Court finds that, to the contrary, these requests stray from the clear "threshold factual questions" that Judge Marrero propounded in the January 29 Order.  (ECF No. 116 at 8).  Whereas answers to Judge Marrero's questions would address restrictions on EEA Inc.'s ability to dispose of its assets, Coventry's has not demonstrated how responses to its Interrogatories would reveal how EEA Inc. is purportedly attempting to render itself judgment proof.

Accordingly, the Court declines to compel EEA Inc. to provide responses to Coventry's Interrogatories.

### III.   CONCLUSION

For the reasons set forth in this Discovery Order, the Court ORDERS as follows:

(1) The Guernsey Manager documents shall be excluded from the TAR review and shall be manually reviewed and produced by **January 8, 2021**.

(2)  Phase II Discovery shall include (a) a search of Barry John's ESI but not the other six custodians; and (b) application of search terms to the Mimecast data, production of a hit report, and a meet-and-confer among the parties as to whether any responsive data shall be produced and if so, on what timeline.

(3) Coventry's motion to expand document discovery to include the period prior to January 1, 2017 is DENIED.

(4) By **Monday, December 21, 2020**, EEA Inc. shall serve on Coventry the names of the attorneys, in-house and outside counsel, who were involved in the communications recorded on the categorical privilege log, and identify which logged communications were sent by those attorneys.  The parties must then meet-and-confer regarding particular communications, if Coventry continues to have questions regarding the privilege.  If the

parties remain unable to resolve this dispute, they may propose an <u>in camera</u> review by the Court of a sample of no more than 20 privileged documents.

(5) EEA Inc. is directed to remove redactions predicated on irrelevance, following a meet-and-confer with Coventry regarding the prioritization of and schedule for their reproduction.

(6) The parties shall meet-and-confer as to the AEO designations, and if by **Friday, January 22, 2021** any disputes remain, the parties shall jointly file a letter setting forth their respective positions.

(7) Coventry's application to compel supplemental responses to the Interrogatories is DENIED.

Dated:       New York, New York
             December 16, 2020


_____
SARAH L. CAVE
United States Magistrate Judge