UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

COVENTRY CAPITAL US LLC,

                              Plaintiff,

        -v-                                                CIVIL ACTION NO.: 17 Civ. 7417 (VM) (SLC)

                                                           **OPINION AND ORDER**[1]
EEA LIFE SETTLEMENTS INC. et al.,

                              Defendants.

**SARAH L. CAVE**, United States Magistrate Judge.

**I.INTRODUCTION**

        Before the Court is the motion of Plaintiff Coventry Capital US LLC ("Coventry") to compel

(ECF No. 283 (the "Motion")), which challenges several privileges that Defendant EEA Life

Settlements, Inc. ("EEA Inc.") has asserted over certain documents belonging to or held by EEA

Life Settlements Fund PCC Limited (the "Fund").  First, Coventry objects to EEA Inc.'s withholding

on grounds of attorney-client privilege certain drafts of documents, other versions of which EEA

Inc. did produce.  (Id. at 4–5).  Second, Coventry argues that EEA Inc. has applied overly-broad

redactions based on attorney-client privilege, and asks the Court to conduct an in camera review

of an exemplar of disputed redactions.  (Id. at 6).  EEA Inc. stands on its privilege assertions, and

does not oppose the Court's in camera review of the disputed redactions.  (ECF No. 288).[2]  For

the reasons set forth below, Coventry's Motion is GRANTED IN PART AND DENIED IN PART.

---

[1] This Order was previously filed under seal on September 15, 2021.  (ECF No. 299).  On September 21,
2021, the parties informed the Court that they had no objections to the public filing of this Order.  (ECF
No. 300).
[2] The Motion also raised a dispute concerning EEA Inc.'s assertion of regulatory privilege as to certain
documents.  (ECF No. 283 at 2–4).  EEA Inc. subsequently withdrew the assertion of regulatory privilege

## II. BACKGROUND

### A. Factual Background

The factual background of this matter appears in several previous decisions issued by the Honorable Victor Marrero, as well as the undersigned, over the course of this contentious litigation arising from the negotiation of a contract to sell a portfolio of life insurance policies to Coventry.  See Coventry Cap. US LLC v. EEA Life Settlements Inc., No. 17 Civ. 7417 (VM) (SLC), 2021 WL 961750 (S.D.N.Y. Mar. 15, 2021) (overruling Coventry's objections to two aspects of the Dec. 16, 2020 order resolving various discovery disputes); Coventry Cap. US LLC v. EEA Life Settlements Inc., No. 17 Civ. 7417 (VM) (SLC), 2020 WL 7383940 (S.D.N.Y. Dec. 16, 2020) (resolving various discovery disputes); Coventry Cap. US LLC v. EEA Life Settlements Inc., 439 F. Supp. 3d 169 (S.D.N.Y. 2020) (granting in part a motion for reconsideration of an order compelling directors' production of documents); Coventry Cap. US LLC v. EEA Life Settlements Inc., 334 F.R.D. 68 (S.D.N.Y. 2020) (affirming grant of Coventry's motion to compel production from EEA Inc.'s affiliated entities); Coventry Cap. US LLC v. EEA Life Settlements Inc., No. 17 Civ. 7417 (VM) (SLC), 2019 WL 6336326 (S.D.N.Y. Nov. 26, 2019) (granting Coventry's renewed motion to compel production from EEA Inc.'s affiliated entities); Coventry Cap. US LLC v. EEA Life Settlements Inc., 333 F.R.D. 60 (S.D.N.Y. 2019) (granting Coventry's motion to compel production of documents from EEA Inc.'s affiliated entities); Coventry Cap. US LLC v. EEA Life Settlements Inc., 357 F. Supp. 3d 294 (S.D.N.Y. 2019) (denying motion for reconsideration of denial of preliminary injunction); Coventry Cap. US LLC v. EEA Life Settlements Inc., No. 17 Civ. 7417 (VM) (SLC), 2018 WL 7080327

---

and produced the withheld documents.  (ECF No. 296 at 1).  Therefore, the Court does not render any opinion on the regulatory privilege in this Order.

(S.D.N.Y. Dec. 17, 2018) (denying motion for preliminary injunction); <u>Coventry Cap. US LLC v. EEA Life Settlements Inc.</u>, No. 17 Civ. 7417 (VM) (SLC), 2018 WL 3231718 (S.D.N.Y. Mar. 9, 2018) (denying letter-motions to dismiss).  Accordingly, the Court incorporates the factual summaries in those decisions and presumes the reader's familiarity with the relevant background to the current discovery disputes.

### B.  **Procedural Background**

Discovery in this action has been ongoing for several years, and as is apparent from the decisions listed above, has involved numerous disputes requiring Court intervention.  At the Court's encouragement, the parties engaged in considerable negotiations over several months regarding EEA Inc.'s assertion of privilege, but were unable to resolve all of their disputes.  (See ECF Nos. 271; 272; 275; 277).  The parties agreed to and the Court adopted (and subsequently extended) a briefing schedule for the unresolved privilege disputes.  (ECF Nos. 279; 280; 287). On June 18, 2021, Coventry filed its Motion (ECF No. 283), on July 19, 2021, EEA Inc. filed its Opposition (ECF No. 288), and on July 30, 2021, Coventry filed its Reply.  (ECF No. 293).  The Court scheduled, and later adjourned at the parties' request, oral argument on the Motion, which occurred on September 9, 2021.  (ECF Nos. 289; 291; 292).

### III.<u>DISCUSSION</u>

### A.  **Draft Documents**

Coventry objects to two categories of draft documents EEA Inc. has withheld from its production based on attorney-client privilege:  (1) certain "versions of a document reflecting the EEA entities' business plans" referred to as the "Manager Recommendations" and accompanying

3

cover emails,[3] and (2) "dozens of drafts of contracts that were exchanged with Coventry" referred to as the "Contracts."[4]  (ECF No. 283 at 4).

### 1.  Legal standard

"The attorney-client privilege was designed 'to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and [the] administration of justice.'"  TVT Records v. Island Def Jam Music Grp., 214 F.R.D. 143, 144 (S.D.N.Y. 2003) (quoting Upjohn Co. v. United States, 449 U.S. 383, 389 (1981)).  "Because the privilege 'stands in derogation of the public's right to every [person's] evidence . . . it ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle.'"  Id. (quoting In re Grand Jury Proc., 219 F.3d 175, 182 (2d Cir. 2000)); see Brown v. Barnes & Noble, Inc., 474 F. Supp. 3d 637, 648 (S.D.N.Y. 2019) ("The privilege is narrowly construed because it renders relevant information undiscoverable.").  The Second Circuit has explained that the attorney-client privilege applies:

> (1) where legal advice of any kind is sought (2) from a professional legal advisor in his [or her] capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his [or her] instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except [where] the protection [is] waived . . .

---

[3] The Manager Recommendations (and cover emails) that EEA Inc. has withheld bear the following bates-numbers:  COV-00296606, COV-00296698, COV-00296910, COV-00296911, COV-00297625, COV-00296605, COV-00296909, COV-00297516, COV-00297617, and COV-00297624.  (ECF No. 283 at 4 n. 5).
[4] The Contracts bear the following bates-numbers: COV-00277855, COV-00278599, COV-00278672, COV-00278900, COV-00279813, COV-00279814, COV-00279815, COV-00302812, COV-00302813, COV-00303125, COV-00303126, COV-00303127, COV-00303166, COV-00303167, COV-00304659, COV-00306329, COV-00306330, COV-00306331, COV-00306567, COV-00306568, COV-00306569, COV-00306570, COV-00307717, COV-00307718.  Slip sheets were inserted for some of the Contracts with the following bates-numbers: EEA-017490, EEA-017495, EEA-017507, EEA-017508, EEA-017550, EEA-017555, EEA-017559, EEA-017603, EEA-017644, EEA-017662, EEA-017696, EEA-017719, EEA-017758, EEA-17759, EEA-021072, and EEA-021073.  (ECF No. 283 at 4).

In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983, 731 F.2d 1032, 1036 (2d Cir. 1984). A party who invokes attorney-client privilege "must demonstrate that the information at issue was a communication between client and counsel or his [or her] employee, that it was intended to be and was in fact kept confidential, and that it was made in order to assist in obtaining or providing legal advice or services to the client." Bowne of New York City, Inc. v. AmBase Corp., 150 F.R.D. 465, 470–71 (S.D.N.Y. 1993).[5]

The mere fact that a document was transmitted between an attorney and his or her client does not render the document privileged; rather, it "must contain confidential communication relating to legal advice." Dep't of Econ. Dev. v. Arthur Andersen & Co., 139 F.R.D. 295, 300 (S.D.N.Y. 1991); see Renner v. Chase Manhattan Bank, No. 98 Civ. 926 (CSH), 2001 WL 1356192, at *1 (S.D.N.Y. Nov. 2, 2001) (rejecting argument that "any reference to any communication between [a client] and one of his attorneys on any document shields that entire document from disclosure, whether or not the document reveals communications made by [the client] to his attorneys in confidence and for the purpose of obtaining legal advice").

As this Court has explained, "the privilege attaches not only to communications by the client to the attorney, but also to advice rendered by the attorney to the client, at least to the extent that such advice may reflect confidential information conveyed by the client." In re Keurig Green Mtn. Single-Serve Coffee Antitrust Litig., No. 14 Md. 2542 (VSB) (SLC), 2020 WL 8465433,

---

[5] Bowne described the showing required under New York law, and although the parties here do not articulate whether New York or U.K. law should apply to the attorney-client privilege analysis, the Court notes that "[t]he privilege analysis under U.K. law parallels the analysis under New York law." Guiffre v. Maxwell, No. 15 Civ. 7433 (RWS), 2016 WL 1756918, at *4 (S.D.N.Y. May 2, 2016) (noting that privilege analysis under U.K. law requires "(i) a communication between an attorney and client, (ii) made in the course of the representation, (iii) for the purpose of providing legal advice").

at *2 (S.D.N.Y. Oct. 30, 2020) (quoting Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A., 160 F.R.D. 437, 441–42 (S.D.N.Y. 1995)).  Because in-house lawyers often perform both legal and business functions, however, "communications between a corporation's employees and its in-house counsel, though subject to the attorney-client privilege, must be scrutinized carefully to determine whether the prominent purpose of the communication was to convey business advice and information or, alternatively, to obtain or provide legal advice," with only the latter being protected by the attorney-client privilege.  Brown, 474 F. Supp. 3d at 648.  "In addition, 'the privilege protects from disclosure communications among corporate employees that reflect advice rendered by counsel to the corporation,' and thus 'the dissemination of confidential communications to [the corporation's employees] does not defeat the privilege.'"  In re Keurig, 2020 WL 8465433, at *2 (quoting Bank Brussels, 160 F.R.D. at 442).

     **2.  Application**

       **a.  Manager Recommendations**

The Manager Recommendations (and their cover emails), Coventry argues, "contain only business information," and are therefore not privileged.  (ECF No. 283 at 5).  And, Coventry maintains, EEA Inc.'s production of four versions of the Manager Recommendations operates as a waiver over any attorney-client privilege that could arguably apply to the withheld versions of the same document, all of which are authored by a non-lawyer, Vincent Piscaer.  (Id. at 4).  At most, Coventry insists that EEA Inc. may only redact "a specific comment or edit from a lawyer that is privileged," while producing the balance of the document.  (Id. at 5).

EEA Inc. argues that Mr. Piscaer drafted the withheld versions of the Manager Recommendations "following discussions with, and at the direction of, Andrew Harrop (General

Counsel for the Manager)," who "provided input ahead of the preparation of the first version of the 'Manager Recommendation[s],'" such that those documents "entirely reflected Mr. Harrop's legal advice." (ECF No. 288 at 4). EEA Inc. states that "[e]ach subsequent draft was then sent between Mr. Piscaer and Mr. Harrop for the latter to review and provide legal advice . . . as part of a continuous chain of confidential and privileged communications." (Id.) EEA Inc. contends that the disclosure of some drafts does not waive the privilege as to other drafts that were never shared with Coventry, and rejects Coventry's assertion that the Manager Recommendations contain only business information, pointing to Mr. Harrop's role in "mitigating the Manager's legal risks." (Id.)

The Court finds that each of the drafts of the Manager Recommendations (and their cover emails) are protected by the attorney-client privilege because they constitute communications for the purpose of seeking or providing legal advice. Each document reflects communications between Mr. Piscaer and Mr. Harrop concerning legal review of the contents of the respective draft of the Manager Recommendations. It is undisputed that the withheld drafts were not shared with third parties, and EEA Inc.'s production of versions of the Manager Recommendations, which did not contain such a request for or provision of legal advice, did not act as a waiver of the privilege. See Pearlstein v. Blackberry Ltd., No. 13 Civ. 07060 (CM) (KHP), 2019 WL 1259382, at *19–20 (S.D.N.Y. Mar. 19, 2019) (holding that drafts of contract containing notes from business manager to in-house counsel requesting legal review were privileged); Valassis Commc'ns, Inc. v. News Corp., No. 17 Civ. 7378 (PKC), 2018 WL 4489285, at *4 (S.D.N.Y. Sept. 19, 2018) (holding that confidential drafts of meeting minutes from general counsel "to employees in a position to act on the advice" were privileged). This is a situation in which "a draft

document sent to a lawyer [is] a confidential communication made for the predominant purpose of obtaining legal advice even though the draft is intended ultimately to become a business document when and if the lawyer's legal input or approval is received." Id. at *2.  In addition, the Court finds that redaction would not be feasible for the Manager Recommendations, given the extent of the markups in the drafts.  Therefore, EEA Inc. may continue to withhold the Manager Recommendations (and cover emails) in their entirety.  See Pearlstein, 2019 WL 1259382, at *12 (finding that redaction would not be "appropriate or feasible").

### b.  Contracts

Coventry argues that EEA Inc. exchanged draft versions of the Contracts with Coventry during the parties' 2017 negotiation process, and has thus improperly withheld other versions of the same Contracts.  (ECF No. 283 at 5).  Coventry also notes that EEA Inc.'s Investment Advisor also included versions of the Contracts in its document production in this action.  (Id.)  Coventry contends that such "voluntary disclosure" effected a waiver of the attorney-client privilege.  (Id.) At most, Coventry contends, EEA Inc. may redact only those portions of the Contracts reflecting requests for or provision of legal advice.  (Id.)

EEA Inc. responds that the versions of the Contracts it has withheld are versions that it did not share with Coventry, and therefore did not voluntarily disclose.  (ECF No. 288 at 5). Because the withheld versions were exchanged with an attorney "for the purpose of seeking legal advice," EEA Inc. maintains that they remain protected by the attorney-client privilege.  (Id.)

The Court concludes that EEA Inc. has "met its burden" of showing that the withheld Contracts, like the Manager Recommendations, reflect requests for or provision of legal advice, and are protected by the attorney-client privilege.  Pearlstein, 2019 WL 1259382, at *12.

Similarly, the Court finds that redaction of the extensive edits would not feasible, and EEA Inc. may withhold the documents in their entirety.  Id. at *12, 18.

**B.  Redactions**

**1.  Legal standard**

Coventry contests the redactions EEA Inc. has made based on attorney-client privilege (ECF No. 283 at 6), and therefore, the same legal standards set forth in § III.A.1, supra, apply.

**2.  Application**

The first type of redactions to which Coventry objects appear on five documents that do not "involve any lawyer or indicate that legal advice was being discussed."  (ECF No. 283 at 6; see ECF Nos. 283-22 – 283-26).  The Court finds that the redactions on ECF Nos. 283-22 and 283-23 are appropriate because they concern communications between a lawyer—Mr. Harrop—and contain either requests for or provision of legal advice.  The redactions on ECF No. 283-24 cover the "intra-corporate distribution of legal advice received from counsel, [which] does not necessarily vitiate the privilege, even though the legal advice is relayed indirectly from counsel through corporate personnel."  Tower 570 Co. LP v. Affiliated FM Ins. Co., No. 20 Civ. 799 (JMF), 2021 WL 1222438, at *3 (S.D.N.Y. Apr. 1, 2021) (quoting Nat'l Educ. Training Grp., Inc. v. Skillsoft Corp., No. M8-85 (WHP), 1999 WL 378337, at *3 (S.D.N.Y. June 10, 1999)).  EEA Inc. has redacted the top three emails in the chain that appears on ECF No. 283-25.  The Court finds that the first two redacted emails do not copy Mr. Harrop or reflect the intra-corporate distribution of legal advice that appeared in ECF No. 283-24, and, accordingly, must be unredacted.  In contrast, the third email on ECF No. 283-25 does reflect an internal distribution of Mr. Harrop's advice, and is therefore properly redacted.  In ECF No. 283-26, the Court finds that although Mr. Harrop is

copied on the email dated 4/20/17 at 9:17 am, that email does not contain a request for or provision of legal advice, and is therefore not privileged and should be un-redacted.  See Tower 570 Co. LP, 2021 WL 1222438, at *6 (directing the production of communications on which lawyer was copied but was not "done for the purpose of obtaining or providing legal advice").

The second category of redactions to which Coventry objects are on three documents "that appear[] to have been business related, not legal."  (ECF No. 283 at 6; see ECF Nos. 283-27 – 283-29).  The Court finds that the redactions on these three documents reflect Mr. Harrop's legal advice concerning the possible exposure to the Fund of certain courses of action, steps to mitigate such risks, and/or the legal significance of certain events in the negotiation process. Accordingly, they are privileged and properly redacted.

Finally, Coventry objects to the redactions on three documents that "include selective redactions and productions of Mr. Harrop's own communications regarding business-related matters about the negotiations with Coventry."  (ECF No. 283 at 6; see ECF Nos. 283-30 – 283-32)).  Coventry is concerned that EEA Inc. has "produced portions that are critical of Coventry, while redacting other portions," (ECF No. 283 at 6), and objects to EEA Inc. using the privilege "as a shield and a sword."  (Id. (quoting United States v. Bilzerian, 926 F.2d 1285, 1292 (2d Cir. 1991)). The Court finds that the redactions in each of these three documents concern Mr. Harrop's legal advice, his interpretations of the legal significance of events, or strategies for soliciting the advice of other law firms on the law of other jurisdictions.  Accordingly, these three documents are also properly redacted.

## IV. <u>CONCLUSION</u>

For the reasons set forth above, the Motion is GRANTED IN PART AND DENIED IN PART, as follows:

(1)  The Motion is DENIED as to the Manager Recommendations (and cover emails) and the Contracts.

(2)  With respect to the redactions, the Motion is GRANTED to the extent that Coventry must remove the redactions from and produce:

(i) the first two emails on ECF No. 283-25; and

(ii) the email dated 4/20/17 at 9:17 am on ECF No. 283-26, and is otherwise DENIED.

(3)  EEA Inc. shall apply the Court's guidance as to any other redactions, remove redactions that are similar to (2)(i) and (ii) above, and re-produce any such documents accordingly.

The Clerk of Court is respectfully directed to close ECF No. 283.

Dated:      New York, New York
            September 15, 2021

SO ORDERED.

SARAH L. CAVE
United States Magistrate Judge

11